ARTHUR BOYCE, JR., APPELLEE, V. J. R. BURLEIGH,
APPELLANT.

FILED JULY 18, 1924.   No. 24062.

1. Master and Servant: INJURY: COURSE OF EMPLOYMENT. Where
   an employee received an accidental injury while upon the master's
   premises and subject to the master's directions, though at the
   time not actually engaged in doing any work for the master,
   the accident occurred in the course of the employment.

2. ———: ———: ———. Where an employer operated a
   chicken hatchery and kept upon the premises a gun to be used
   in shooting pigeons which were in the habit of devouring the
   food scattered upon the ground for the chickens, held, that an
   injury to an employee, resulting from the accidental discharge of
   the gun in the hands of a fellow servant, arose out of the
   employment.

APPEAL from the district court for Lancaster county:
JEFFERSON H. BROADY, JUDGE.  Affirmed.

Sorensen & Bollen and Sterling F. Mutz, for appellant.

Frank M. Coffey, contra.

Heard before MORRISSEY, C. J., GOOD, DAY and THOMP-
SON, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is an action for compensation under the employers'
liability law.  Compensation was denied by the commis-
sioner, but upon appeal to the district court plaintiff was
awarded the expense of hospital and doctor bills and $6
a week for 150 weeks, and a penalty of 50 per cent. for
waiting time.  The injury to plaintiff was caused by the
accidental discharge of a shotgun in the hands of a fellow
employee, and resulted in the loss of his right foot.  The
defendant has appealed to this court.  The defendant con-
ducts a chicken hatchery and employed the plaintiff, Ar-
thur Boyce, of the age of 19 years, and several other boys
of about the same age, among others Rex Hazelrig, who
was handling the gun contrary to orders at the time it
was accidentally discharged.  By the terms of the employ-

ment plaintiff was to do a number of things and whatever he was called upon to perform in connection with the business of the hatchery, and was to receive wages in the sum of $6 or $7 a week and his board and lodging on the premises of the employer. No hours of services were fixed, but plaintiff was expected to remain upon the premises subject to the directions of his employer. The meals were taken with the employer's family and the rooms where the boys slept were in a separate building from the hatchery. The office was on the first floor of the hatchery building and consisted of a room in which the office desk and other furniture was separated from the part used by the public by a banister or railing. The office was used in the evenings by the boys as a place of recreation, reading matter and a phonograph being provided for their entertainment. In another room of the building was a pool table upon which the boys were permitted to play. Plaintiff's employment commenced May 20, 1923, and continued until the date of the accident on June 30, following. There is some dispute in the evidence as to whether the work of the day was all done before the evening meal, but we think that an inference fairly arises from the testimony that such was not one of the requirements of the employment, and that in practice quite a number of chores were done after supper. Plaintiff so testified and he is supported in this by Hazelrig. Two week's after plaintiff's employment commenced the defendant procured a shotgun and shells for the purpose of being used to shoot or scare away pigeons which were in the habit of devouring the feed spread upon the ground in the feed lots where the chickens were kept, and the same had been used a number of times by the defendant for that purpose prior to the accident. It was a single-barreled shotgun and when not in use was kept unloaded in the office behind the door, the shells being kept in the desk. The boys had been warned not to use the shotgun, but on several occasions, during the absence of the defendant, plaintiff had taken it out and shot pigeons or shot it in the air. Hazelrig had never had the gun in his hands until just before the accident,

which occurred on Saturday evening after supper between 6 and 7 o'clock. On that evening supper was had a little earlier than usual, about 5:30, and defendant was going to take the plaintiff down town to get a hair cut, but upon telephoning his mother she forbade him going, and after defendant left plaintiff took the gun and went out and shot at pigeons, brought it back and stood it unloaded in the corner where it was kept. A short time thereafter, while the boys were in the office, Hazelrig picked up the gun, procured a shell from the desk and loaded the gun, and, as he was passing through the room to go out, it was accidentally discharged, striking the plaintiff in the right ankle and injuring him to such an extent that his foot had to be amputated. Plaintiff testifies that a part of his work consisted in filling a pail with water and leaving it in the cellar by the furnace for the use of Mrs. Burleigh, who had charge of the heating apparatus connected with the incubators, and that he generally performed that work after supper. He further testified that just before the accident he was passing by the stove in the office on his way to secure the bucket for the purpose of filling it and placing it by the furnace in the cellar, when the gun was discharged and he received his injury. Hazelrig testified that he thinks plaintiff was leaning over a desk at the time the gun went off, and that he does not think plaintiff had the pail with him, but plaintiff's testimony was to the effect that he was going after the pail. We do not think this dispute is of much importance for reasons which will be stated later on.

The defendant makes two contentions as grounds for reversing the judgment of the district court: (1) That the accident did not occur during the course of the plaintiff's employment; and (2) that plaintiff's injury did not arise out of the employment.

As to the first contention, we are of the opinion that the finding of the district court that the accident occurred during the course of the plaintiff's employment is amply sustained by the evidence and therefore should not be disturbed, if the testimony of plaintiff is believed, he was actually

engaged, at the time of the accident, in the performance of
work for which he was employed; but beyond this, there is
ample authority to the effect that the relation of master
and servant continues during the time that the servant is
upon the premises of the master and subject to his orders,
whether or not actually employed at the moment in per-
forming some of the master's work. *City of Milwaukee v.
Althoff*, 156 Wis. 68; *Haller v. City of Lansing*, 195 Mich.
753; *In re Bollman*, 73 Ind. App. 46; *International & G. N.
R. Co. v. Ryan*, 82 Tex. 565; C. J. Treatise, Workmen's Com-
pensation Acts, p. 80, sec. 72, and cases cited. And especial-
ly in this case, where it was a part of the contract of em-
ployment that the servant as a part of his compensation re-
ceived board and lodging upon the premises where the busi-
ness of the master was carried on, and was required to re-
main there subject to orders, it may justly be said that the
relation of master and servant existed, the employment con-
tinued, and the accident occurred during the course of such
employment. See *Bollman* and *Ryan* cases, *supra*.

As to the second contention, that plaintiff's injuries did
not arise out of employment, we are also of the opinion that
the finding of the district court in the premises is correct.
In *Socha v. Cudahy Packing Co.*, 105 Neb. 691, we held:

"Where the nature of the employment is such as to ex-
pose a worker to a wrongful act by another worker, which
may reasonably be said to have been induced by the peculiar
conditions of the employment, the manner in which it was
carried on, and the appliances required, such an act may
reasonably be said to 'arise out of the employment.' "

In that case a fellow servant, in a spirit of playfulness,
applied to the person of claimant's decedent the nozzle of a
compressed air hose, in such a manner as to rupture dece-
dent's intestines, causing his death, and in the opinion the
court quotes with approval the following excerpts from
*McNicol's Case*, 215 Mass. 497:

"It 'arises out of' the employment, when there is apparent
to the rational mind, upon consideration of all the circum-
stances, a causal connection between the conditions under

which the work is required to be performed and the result-
ing injury under this test, if the injury can be seen to have
followed as a natural incident of the work and to have been
contemplated by a reasonable person familiar with the
whole situation as the result of the exposure occasioned by
the nature of the employment, then it 'arises out of' the em-
ployment.  *   *   * The causative danger must be peculiar
to the work and not common to the neighborhood.  It must
be incidental to the character of the business, and not inde-
pendent of the relation of the master and servant.  It need
not have been foreseen or expected, but after the event it
must appear to have had its origin in a risk connected with
the employment, and to have flowed from that source as a
rational consequence."

The court then reviews a number of cases where the
principle has been applied, which are very instructive as ap-
plied to the instant case.  The shotgun in question was an
instrumentality employed in the conduct of the business of
the hatchery for the purpose of preventing wild pigeons
from consuming the food distributed to the chickens.  That
a shotgun is a dangerous instrument to have around
premises where young boys are employed, who may have ac-
cess to it, needs no argument, but the defendant himself
appreciated that fact and warned the boys against using it.
It nevertheless existed as one of the conditions surrounding
the performance of the work in which the servants were
employed.  If the accident had happened while the gun was
in the hands of the defendant for the purpose of shooting
pigeons, no one would question but that it arose out of the
employment; but the negligent or improper use of instru-
mentalities employed in the industry, by a fellow servant, is
as much a risk or hazard of the employment as the same
instrumentality in the hands of the master, and in our
judgment furnishes equally sound reasons for a like hold-
ing.  When it is considered that the plaintiff was upon the
premises of the master as required by the contract, and
received his injury in consequence of conditions surround-
ing the regular conduct of the business of the master,

the causal connection between the industry and the accident is complete.

Counsel for defendant refer to the case of *Hibberd v. Hughey,* 110 Neb. 744, in which the distinction is made between disobedience of orders as to the manner in which the work shall be done and as to the place where it shall be done; but at the time of the accident in this case the plaintiff was not disobeying orders and was in the proper place for performance of his work, and so the case cited has no application.

Defendant argues with much earnestness that the disobedient act of plaintiff in using the gun was the inducement for Hazelrig using it, and that therefore plaintiff brought the injury upon himself. We are unable to perceive the logic of this contention. There is no claim that the plaintiff suggested to Hazelrig to use it, and his act was quite independent of plaintiff, and without his knowledge prior to the accident. If the boys had been engaged in a joint undertaking with the gun, a different question might arise, though this we do not decide; but clearly in the absence of any intention on the part of plaintiff to influence Hazelrig's conduct with reference to the gun, the mere force of bad example furnishes no causal connection between the two acts.

It is finally contended that plaintiff was guilty of wilful negligence when he took the gun out and used it; but his act was not the proximate cause of his injury. It had spent its force so far as its potentiality for harm may have existed. The proximate cause was the act of a fellow servant.

The judgment of the district court is affirmed, and appellee is allowed an attorney's fee of $200 on the appeal to be taxed as costs.

AFFIRMED.

Note—See Workmen's Compensation Acts, p. 73, sec. 64; p. 80, sec. 72.