CITY OF FREMONT, APPELLANT, V. FRIEDA LEA, APPELLEE.

FILED APRIL 26, 1927. NO. 25454.

1. Master and Servant: WORKMEN'S COMPENSATION: REVIEW. On appeal from the district court to the supreme court in a workmen's compensation case, findings of fact supported by sufficient evidence and findings of fact on substantially conflicting evidence will not be reversed unless clearly wrong.

2. ———: ———: AFFIRMANCE. Evidence examined and *held,* that the action of the district court in this case, determining that deceased, Lea, was a paid employee of the city of Fremont, that the injury which caused his death was accidental and not due to his willful negligence, and arose out of, and in the

course of, his employment, is, in view of the rule above announced, sustained by the record here presented.

3. ———: ———: ATTORNEY'S FEES. Where defendant, on appeal to the district court, in a workmen's compensation case, secures a substantial reduction of the amount of recovery against him, plaintiff's attorney's fees for services performed in the district court may not be allowed and taxed against the defendant.

APPEAL from the district court for Dodge county: FREDERICK W. BUTTON, JUDGE. *Affirmed as modified.*

*Brogan, Ellick & Raymond* and *Quintard Joyner,* for appellant.

*J. C. Cook* and *Dolezal, Spear, Mapes & Stevens, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

Frieda Lea, hereinafter referred to as plaintiff, presented to the compensation commissioner of Nebraska a claim against the city of Fremont on account of the death of her husband, based on the provisions of the Nebraska compensation act. The claim was, by the commissioner, heard and allowed. The city appealed to the district court for Dodge county, where the action of the compensation commissioner was confirmed, except as to penalty. The defendant now prosecutes a further appeal to this court.

This appeal, thus made, is now to be heard and determined subject to the limitations of the doctrine heretofore adopted and repeatedly announced by this court: "On appeal from the district court to the supreme court in a workmen's compensation case, findings of fact supported by sufficient evidence and findings of fact on substantially conflicting evidence will not be reversed unless clearly wrong." *American Smelting & Refining Co. v. Cassil,* 104 Neb. 706. See, also, *Tragas v. Cudahy Packing Co.,* 110 Neb. 329; *Simon v. Cathroe Co.,* 106 Neb. 535.

Appellant city here contends that Lea had no compensable

status; that the fire department of which he was a member and a representative at the time of his injury was strictly a voluntary organization and constituted no part of the city government; that he was not legally employed by the city; that his death was due to his own wilful negligence; but, if it should be determined that he was an employee of the city of Fremont, then that the fatal injury that he received did not arise out of, or in the course of, such employment.

A brief summary of some of the important events which furnish the setting of the transaction before us may be of assistance. The state firemen's organization, in 1925, held its forty-third annual meeting at Hastings, Nebraska. In accordance with the object of its creation, the program and arrangements of this association for this meeting, as usual, afforded visiting firemen opportunities to inspect, examine, and study modern and improved fire-fighting apparatus, and also to receive instructions in the latest and approved ways of fire fighting and protection against fire. In 1925, as well as for many years prior thereto, the Fremont fire department was represented at this meeting of the state organization by a delegation selected from the membership of the department, consisting in part of nonpaid members, and in part of paid members. It appears from the record that for years it had been apparently an established municipal policy of this city that one or more of the paid members of its fire department should be sent to this state meeting for instruction. Lea, as such, had attended the annual meeting of the state association held in 1924 on full pay, and with the cost of substitute provided for at the expense of the city. Such, indeed, was his situation while in attendance at the Hastings convention in 1925. After arrival at that city with the "Fremont delegation," he was proceeding along the public street to the place of registration, as provided and required by the rules of the state organization, in the immediate company of the chief of his department; and a toy cannon, then under sole control of a third party, was accidentally discharged, which wounded

Lea, from the effects of which he died. The toy cannon in question was one which for 20 years or more had been in the possession of the Fremont fire department and was used by it for saluting purposes. Lea was in no manner connected with the operation of the cannon at the time he was injured. Earlier in the morning, however, Lea had been engaged in firing the cannon at Fremont, en route from Fremont to Hastings, and in Hastings. He had, however, discontinued this diversion some time before the injury in controversy was received.

For more than 25 years the city of Fremont has been a city of the first class, having more than 5,000 and less than 25,000 inhabitants. The provisions of its charter appear in chapter 44, Comp. St. 1922. During this period it has been, by charter, empowered to provide for the organization and support of a fire department; to procure fire engines, hooks, ladders, and buckets and other apparatus; to organize fire engine, hook and ladder, and bucket companies, and prescribe rules for duty and the government thereof, with such penalties as the council may deem proper, not exceeding $100, and make all necessary appropriations therefor. Comp. St. 1922, sec. 4006.

These express statutory powers are further supplemented by provisions fully empowering the mayor and council to provide, in absence of statutory provisions, whatever details may be necessary for the full exercise of the powers conferred. Comp. St. 1922, sec. 4038. This grant is in the nature of a police power exercisable for public benefit. The fire department, organized thereunder, is organically a part of the city government. It is to be supported by public funds caused by taxation. The relation between the city and the members of the fire department, organized under, and as contemplated by, the provisions of the charter above referred to, was that of master and servant, or public employees. Whether the department should be organized on a volunteer or nonpay basis, or whether as a paid department, or as a mixed volunteer and paid department,

was and is a mere matter of detail, a question of administration for the mayor and council to determine. But the matter of compensation, or the absence of it, in no manner affected the extent and character of the powers exercisable by the mayor and council over the organization, or the duty of the members of the fire department to comply with the regulations prescribed by the city.

The mayor and council of the city of Fremont, by the adoption of appropriate ordinances, proceeded to exercise the charter powers above referred to. All the ordinances on the subject of the Fremont fire department do not purport to be set forth at length in the record. Enough appears, however, to sustain the conclusion that this fire department is organized pursuant to, and in harmony with, the charter powers enumerated, and that the chief of the department, as well as the department itself, and the members thereof, are subject to the paramount control and direction of the mayor and council of the city of Fremont. It, therefore, follows that the contention that members of a volunteer fire department, or a fire department of the class to which the city of Fremont belongs, have no public status or lawful connection with the municipal government, and can be regarded only as private individuals acting in their own interest and behalf, cannot be accepted. Members of such departments must be accorded the position or status of municipal servants or employees.

It is an undisputed fact in the record that Lea, at the time of his death, and for more than two years prior thereto, was a paid member of the Fremont fire department, and, as such, served continuously and in good faith under such employment by the city. During this period his compensation had been regularly audited and allowed by the mayor and council and paid him pursuant to such action. At the time of his death, and prior thereto, his rate of pay was $115 a month. In view of these facts, we find that his employment was, therefore, within the protection of the Nebraska employers' liability act. Comp. St. 1922, sec. 3038.

Under these facts the city will not be heard to deny the legality of Lea's appointment or employment. *City Council of Sheffield v. Harris,* 101 Ala. 564.

Nor does the fact that the members of the Fremont fire department, thus organized, have united together and adopted a constitution and by-laws for the advancement of their mutual interests and the promotion and objects of their organization in any manner affect the conclusions here reached. The statutory grant to the city is controlling. The organization effected by the membership of the department is necessarily subject to and subordinate to the due exercise of the powers conferred upon the city by the terms of the statute. Therefore, their status was in no manner changed by the voluntary action thus taken. In fact, the wisdom of permitting organizations such as these to exercise a certain subordinate power within restricted spheres has the sanction of legislative recognition. Thus, similar powers are, by statute, expressly conferred upon members of national guard companies. Comp. St. 1922, sec. 3335.

We have also carefully examined the provisions of the constitution and by-laws of the Nebraska State Volunteer Firemen's Association. The object of this association, among others, is "the protection and promotion of the best interests of the firemen of Nebraska." The qualifications for membership are provided for by section 1, art. V of the Constitution, in the words: "Every organized fire department or company, in any city, town or village in the state of Nebraska, may become members of this association by the payment of an entrance fee of $2." This express language confers eligibility alike upon paid organizations and nonpaid organizations. Finally, it contains no provisions excluding a member of a volunteer nonpaid, who subsequently becomes a member of a paid department, from the benefits of the association.

Therefore, we take it that the facts that Lea was a member of the J. C. Cleland hose team of Fremont, a nonpaid organization, and was an elected representative of it to the

forty-third annual convention of the Nebraska State Volunteer Firemen's Association, create no presumption that his status, while attending that state meeting, was other than, a paid member of the organization he represented.

It is insisted by the appellant that Lea's previous connection with the instrumentality which caused his death was such as to charge him with wilful negligence and to deny him recovery. But Lea had no connection with the toy cannon, and was not participating in its use at the time of the accident which caused his death. It cannot be said that his previous acts were the proximate cause of his injury. Those acts had spent their force so far as their potentiality for harm may have existed. The proximate cause of Lea's injury was the act of the third person in charge of the cannon at the time of its discharge which resulted in the injuries from which Lea died. *Boyce v. Burleigh*, 112 Neb. 509.

An express grant of power to a municipality implies on part of the latter the duty to exercise it in a reasonable manner for public good. This necessarily involves on part of city authorities, subject to express or implied restrictions in the terms of the grant, the right to adopt and carry out reasonable plans and to pursue reasonable methods to make the grant effective, and to accomplish the result intended by the donor of the power. As we have seen, the power to organize, support, and maintain fire departments was expressly conferred upon the city of Fremont by the terms of its charter. As cities increase in size, under modern conditions, the necessity of an adequate fire protection correspondingly increases. It must be admitted that, in order to accomplish this necessary work effectively, the city must have men who are instructed and skilled in such work, and able, because of their skill, to combat this increasing peril. The necessities of the situation plainly imposed the duty to provide for the proper instruction of the fire department upon the mayor and council of the city of Fremont.

In discharge of this obligation, the city of Fremont adopted the plan or policy of sending representatives of the

fire department to, or causing them to attend, the annual state convention where such necessary instruction was available. It must be conceded that, as a plan or policy, it was both economical and reasonable and proper. It was within the discretion of the municipal authorities to adopt and carry out. Pursuant to this plan, Lea attended the Hastings convention for the purpose of receiving this essential instruction.

We do not deem the absence of express verbal direction to Lea to attend the Hastings convention, if such was the fact, at all material, in view of the circumstances of this case. An order is but the will of the master which it is the duty of the servant to obey and conform to. It is admitted that it was the "desire" of the authorities that Lea attend. The chief of the fire department approved his going, secured his election as a delegate, and arranged for his attendance. His traveling expenses were provided for. His substitute for local fire duty was secured to be compensated at city expense. His own pay was to continue. In view of all this evidence, it cannot be said that in the slightest degree Lea failed to conform to the municipal will in his attendance at the Hastings convention. Besides, it appears that this was but following a custom that had prevailed for years, and was known and approved by the mayor and council. It therefore follows that the injury occurred when Lea was in the course of his employment. *Stockley v. School District*, 231 Mich. 523.

It is insisted, however, that the accident occurred upon the public streets of Hastings, and that the danger created by the accidental discharge of the cannon was one to which the public, generally, was exposed, and not one which arose out of, or was inherent in, Lea's employment. Under the facts in this case, the question here raised is foreclosed by our previous decision. Even though the accident be sustained by reason of risk incidental to the streets, the accident, under the circumstances of this case, arises out of, as well as in, the course of his employment. *Coster v. Thompson Hotel Co.*, 102 Neb. 585.

City of Fremont v. Lea.

This case is supported by the weight of authority. *Refuge Assurance Co. Ltd. v. Millar,* 5 Butterworth, Com. Cas. (Eng.) 522; *M'Neice v. Singer Sewing Machine Co. Ltd.,* 4 Butterworth, Com. Cas. (Eng.) 351; *Bett v. Hughes,* 8 Butterworth, Com. Cas. (Eng.) 362; *Dennis v. White & Co.,* 2 K. B. Div. 1916 (Eng.) 1; *Pierce v. Provident Clothing and Supply Co. Ltd.,* 1 K. B. Div. 1911 (Eng.) 997; *Milwaukee v. Althoff,* 156 Wis. 68; *Matter of Katz v. Kadans & Co.,* 232 N. Y. 420; *Matter of Roberts v. Newcomb & Co.* 234 N. Y. 553; *Foley v. Home Rubber Co.,* 89 N. J. Law, 474.

The language restricting a master's liability for compensation under our compensation act to "an accident arising out of, and in the course of, employment" was first used in the English act. These words, in this connection, appear in practically all of the American compensation statutes. The English act was largely the source of American legislation. The phrase, "arising out of, and in the course of employment," was construed with reference to street risks by the House of Lords in the case of *Dennis v. White & Co.,* 2 K. B. Div. 1916 (Eng.) 1. In this decision, which publicists generally concede as one of the most important decisions under the compensation acts ever handed down, that tribunal laid down the law with reference to street accidents as follows:

"Where a workman is sent into the streets on his employer's business, whether habitually or occasionally, and whether on foot or on a bicycle, or on an omnibus or a car, and he meets with an accident by reason of a risk of the streets to which his employment exposes him, the accident arises out of as well as in the course of his employment; and it is immaterial that the risk which caused the accident is one which is shared by all members of the public using the streets under the like conditions."

Adhering to *Coster v. Thompson Hotel Co., supra,* it follows that the injury in the present case was not only received while in the course of employment, but arose out of Lea's employment.

Penalties for "delayed payment" to the extent of 50 per

cent. allowed by the compensation commissioner in this case were disallowed on appeal by the district court, which action we approve. It follows, adhering to the construction of the statute involved here adopted, attorney's fees of plaintiff's attorney for services rendered in the district court may not be allowed and taxed to defendant, and that portion of the judgment of the district court so ordering is erroneous and is reversed.

The judgment of the district court, thus modified, is, in all things, affirmed.

AFFIRMED AS MODIFIED.