CARRIE A. PERRY, APPELLANT, v. JOHNSON FRUIT COMPANY, APPELLEE.

FILED JULY 12, 1932. No. 28257.

*Bernard McNeny, Herbert Smith, J. S. Gilham* and *L. A. Sprague,* for appellant.

*Stubbs & Stubbs, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, DAY and PAINE, JJ., and HORTH, District Judge.

Horth, District Judge.

By this proceeding, brought under the workmen's compensation law, the plaintiff, Carrie A. Perry, seeks to recover compensation from the defendant, Johnson Fruit Company, of Hastings, Nebraska, by whom her husband, Lew S. Perry, was employed and whose death while so employed resulted from accidental burns upon his body.

The principal question for determination is: Did the injury causing the death of Lew S. Perry arise out of and in the course of his employment by the defendant?

The compensation commissioner found in favor of the plaintiff and awarded her compensation in the sum of $15 a week for 350 weeks, the sum of $150 for burial benefits, $2.50 paid by plaintiff for hospital expenses, and ordered the defendant to pay to Dr. C. J. McMahon the sum of $10 for medical services rendered by him. Upon an appeal by the defendant to the district court for Nuckolls county, the award of the compensation commissioner was set aside and the plaintiff's action dismissed, and from this latter judgment plaintiff seeks relief by appeal to this court.

The admissions of the defendant and the evidence introduced upon the trial of the cause affirmatively establish that, on November 22, 1930, Lew S. Perry was in the employ of the defendant, Johnson Fruit Company, as a traveling salesman, covering a territory in southern Nebraska, approximating 800 miles; that, by agreement between the employer and the employee, the employee in making the territory on behalf of the employer furnished his own automobile; that as compensation for his services the employee received a monthly salary of $150 and in addition thereto was paid $35 a week for the use of his automobile and other expenses incurred by him; that the headquarters and home of the employee were at Superior, Nebraska; that upon the lot which the employee and his wife, the plaintiff herein, occupied as a home, there was a dwelling-house, a garage, a laundry building and a small tract of plowed ground; that at about the hour of 7 o'clock in the morning of said day the employee entered upon his duties in behalf

of his employer by leaving his home in Superior and in receiving orders for merchandise from customers on behalf of the employer; that returning to his home about an hour later the employee was informed by his wife that another customer of the employer had telephoned to the employee's home an order for some candy during his absence; that the employee had candy in his home belonging to the employer; that the employee went into a room in his home and brought forth the candy with which to fill the order; that the automobile the employee used in the employer's business was standing in the yard at the home of the employee; that the plaintiff saw the employee working on the automobile; that the employee asked plaintiff where he could get some tape to fix his car; that the employee went to the laundry and secured some tape and returned to the dwelling-house and was standing before a fire warming the tape when the plaintiff last saw him prior to the accident; the employee again went to the laundry and filled a pound Butter-Nut coffee can with naphtha gasoline and left; that about fifteen minutes later the employee was next seen with his clothing on fire lying on the ground at a point in the garden about fifty feet distant from the automobile; that the hood of the automobile was raised, the gas pipe was wound with new tape, the burs had been removed from the vacuum tank and the coffee can which had been filled with naphtha gasoline was on the ground about two feet distant from the automobile; the fire in the clothing of the employee was extinguished by others and the employee, with the plaintiff accompanying him, was rushed to a hospital in Superior, and upon reaching there the employee was in a semiconscious state, but soon revived, and upon reviving and within about fifteen minutes after the accident said, as testified to by the plaintiff, that the car exploded and he ran back to smother out the flames; and said, according to the testimony of Dr. Lathan, he was fixing the car and it exploded; and, according to the testimony of another, he said the car exploded and burned me. About three hours later the employee died from shock as a re-

sult of the burns received. There is no evidence in the record that the employee used the automobile for purposes other than those called for under his contract of employment with the defendant.

This court has said that the workmen's compensation act accepts as an inevitable condition of industry the happening of accidents; that its outstanding purpose is to shift from the employee to modern industry the burden of economic waste or loss, "arising out of and in the course of his employment," as a result of his injury or death; that the law is one of general interest, not only to the workman and his employer, but to the state as well, and being remedial in its nature it should be so construed that technical refinements of interpretation will not be permitted to defeat it.

So that the proceeding may not be burdensome to the workman, a simplified form of procedure is provided, for among other things section 48-157, Comp. St. 1929, states that, for the purpose of a hearing before him, the compensation commissioner shall adopt reasonable and proper rules to govern procedure, which procedure shall be as summary and simple as reasonably may be, and that he shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure, other than as herein provided, but may make the investigation in such manner as in his judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the law; and section 48-137 provides for a simplified form of appeal from the award of the compensation commissioner to the district court of the county where the accident happened, where the cause shall be tried as one in equity, and if an appeal is had to the supreme court, the same shall be considered *de novo* and *final judgment entered determining all questions of law and fact in accordance with the provisions of this article.*

If the statements made by the injured employee upon his revival in the hospital a few minutes after the happening

of the accident relative to the cause of the accident were admissible in evidence as a part of the *res gestæ*—and under the authority of *Ridenour v. Lewis*, 121 Neb. 823, we hold that such statements were admissible—we have a complete word picture of all the material facts surrounding the accident upon which to base a conclusion as to whether or not the injuries resulting in the death of the employee arose out of and in the course of his employment by defendant, except the physical acts of the employee at the moment of the accident, and from the facts and circumstances proved, it may be fairly, reasonably and logically inferred that the employee was engaged in making some minor repairs and adjustments upon the automobile preparatory for its use on behalf of his employer.

Personal injuries arising out of and in the course of employment as defined by section 48-152, Comp. St. 1929, do not cover workmen, "except while engaged in, on or about the premises where their duties are being performed, or where their service requires their presence as a part of such service at the time of the injury, and during the hours of service as such workmen."

In *Coster v. Thompson Hotel Co.*, 102 Neb. 585, it is held: "A workman injured by collision with a street car while on the way to procure materials to be used in the work for which he was employed, *and the ordering and procuring of which materials was a common incident of his duties*, was injured 'by accident arising out of and in the course of employment.' " In the body of the opinion, Justice Letton says: "The next point argued by the defendant is that the death 'was not caused by accident arising out of and in the course of employment.' We cannot take this view. It was a part of Coster's duty to obtain materials. He was his own master as to his hours and place where he might engage in his master's service. When he ordered material by telephone from his house he was in the course of his employment, and when he was accidentally struck and killed upon the street while on the way to procure materials, the accident arose out of the employment.

Both the order for the goods and the going to procure them were strictly within his duties. The fact that he rode upon a motorcycle which he commonly used in performing errands and in going to and from his home, does not alter the case. He had the right to use such instrumentalities as were best fitted to perform his master's work."

In *Speas v. Boone County,* 119 Neb. 58, paragraph one of the syllabus reads: "Generally it may be said that an injury 'arises out of' an employment when there is a reasonable casual connection between the conditions under which the work is, in all the circumstances, required to be performed and the injury received while the employee is thus engaged; and that the injury is received 'in the course of' the employment when, at the time the injury is received, the workman is engaged at the work he is employed to perform *or in some duty incidental to that work.* If incidental, it must be incidental to the main character of the business on which the employee was engaged for the employer. It cannot occur independent of the relation of master and servant."

In *Derleth v. Roach & Seeber Co.,* 227 Mich. 258, cited with approval in *Speas v. Boone County, supra,* the employee was a traveling salesman. He furnished his own automobile in making trips for his employer and the employer paid the employee 10 cents a mile for its use. On December 20, 1922, the employee was to make a country trip in his automobile on behalf of the employer. He was fearful that his batteries were frozen and went home the afternoon of the 19th to try them out. It was admitted that he was found in the garage at his home with the motor of his automobile running, and that he died from carbon monoxide gas which was generated by the motor. The defense to the claim of the widow for compensation was that the accident did not arise out of and in the course of the employment of deceased. Held, compensable as arising out of and in the course of employment.

In *Leilich v. Chevrolet Motor Co.*, 40 S. W. (2d) 601, the supreme court of Missouri held that the death of a traveling salesman from carbon monoxide gas poisoning while changing a tire on the employer's automobile in a garage in the rear of the salesman's home arose out of and in the course of his employment. The facts in the Missouri case were that the deceased was employed by the Chevrolet Motor Company in the capacity of traveling sales representative. The employer furnished the employee with an automobile and paid all expenses incident to the operation and maintenance of the same in the prosecution of his work. At times the employee kept the car in a garage he rented in the rear of his home. On the date of the accident resulting in the death of the employee he arose as usual to go to work, dressed in his regular sales clothes, bid his family good bye for the day and went to the garage in the rear of his home for the automobile. A little later he returned saying he had a puncture and would have to change a tire, and to do so said he would change his clothes. He changed his clothes and returned to the garage. An hour later he was found dead on the floor of the closed garage, one wheel of the car was jacked up, and the bolts holding the flat tire and rim attached to that wheel were off and were lying on the running board, the windows and doors of the garage were all shut and the engine was running and the garage filled with gas and smoke. The doctor testified that death was caused by carbon monoxide poisoning. It was held that the death of the employee arose out of and in the course of his employment. In the body of the opinion it is said:

"Leilich was not employed to change tires, but to sell automobiles. But clearly the changing of tires in the circumstances shown by the evidence was *a task incident to his employment as salesman.* Out of the performance of that task the accident arose which caused his death. This being obviously true, why split hairs in trying to trace a 'casual connection' between his employment and his death.

"There can be no question but that the employee in this

case at the time of the happening of the accident which caused his death was engaged in, or about, premises where his services required his presence as a part of such services, within the meaning of section 7 of the act, now section 3305, R.S. 1929."

From the facts and circumstances disclosed by the record in this case, and the principles announced in *Speas v. Boone County, supra,* we find that, at the time of the accident by which the employee met with the injury resulting in his death, he was engaged in making minor repairs and adjustments upon the automobile used by him in the employer's business, and on premises where his services required his presence as a part of his service as such employee at the time of the injury, and during the hours of service as such employee; and that making of such repairs and adjustments was incidental to, and his injuries arose out of and in the course of, his employment by the defendant, within the meaning of sections 48-101 and 48-152, Comp. St. 1929, and that by reason of his death the plaintiff, his dependent, became entitled to compensation of $15 a week for 350 weeks, dating from the 22d day of November, 1930.

Appellant is also entitled to $150 for expenses attending the burial of the deceased employee and an attorney's fee of $200, for services in this court.

The judgment of the district court is reversed and cause remanded, with directions to enter judgment for the appellant in conformity with this opinion.

REVERSED.