MINNIE STRUVE, APPELLEE, V. CITY OF FREMONT, APPELLANT.

FILED OCTOBER 27, 1933. No. 28856.

*Ziegler & Dunn* and *G. W. Becker,* for appellant.

*Waldo Wintersteen* and *J. C. Cook, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY and PAINE, JJ., and SHEPHERD, District Júdge.

SHEPHERD, District Judge.

Whether the judgment of the district court, awarding compensation for the benefit of the widow of Harry D. Struve in the case of Minnie Struve v. City of Fremont now on appeal, shall be upheld in this court is the question for determination here.

The assignments of error are only two, namely, the court erred in finding that the deceased was engaged in the line of his duty at the time of his death; the court erred in not finding that Struve's death was due to his own wilful negligence.

Harry D. Struve had long been the head of the Fremont fire department, a working chief who went to the fires night and day in his own car whenever the call for service came. He was a 24-hour-a-day fire chief, and on regular shift beside.

According to his routine, he was early at the station in the morning—sometimes before breakfast, sometimes immediately after—to inspect equipment, give orders and attend to anything immediately pressing. Through the day he was commonly at the engine fire house or about town to look after fire plugs, buildings and other matters in connection with the work of the department. At night, if nothing detained him, he was at home to eat and sleep, though always ready to answer calls or to labor or direct in any matter of emergency.

For his services he received $150 a month, and the city paid for the gas and oil and repairs necessary for

his automobile. He used this automobile, not only on the alarm of fire, but to take him about town according to his employment, also to convey him to and from his home in the performance of his duties. Occasionally he used the car for family purposes or for his own convenience. Its primary use, however, was for the city and the fire department.

The city, by its council or governing body, passed an ordinance in due form authorizing and delegating him to attend a firemen's convention in Omaha in order that he might have opportunity to study methods of fire-fighting and department management and to counsel with other chiefs and firemen of experience. He had been attending this convention on the day before the day of his demise, and was expecting to attend again on that unfortunate day. He was also to take another Fremont fireman with him in his car.

He arose early in the morning that day and went out, saying to his wife, "I can't sleep any longer, I am going up to the station for a minute." After dressing and preparing breakfast his wife found him dead or at the point of death in his car, the victim of monoxide gas poisoning. One of the doors to the garage in which the car was standing was open, the hood on the carburetor side was up, the engine was running, and the man was lying on his side on the cushions, his feet upon the running-board and his hand hanging forward as if he had been reaching for the choke when unconsciousness came upon him.

The open door, the posture of the body, together with evidence that it had been the practice of the deceased to tune up the car in the morning, and that the car had been hard to start recently, put suicide out of question. No defense on that ground was made in the trial court, nor is the same presented in this court.

Numerous cases have been cited in which employees have been injured or killed while going or coming on their own responsibility, or while they were abroad on their own business or for their own pleasure, or while

they were using means of conveyance not permitted by their orders and not designated by their employers. In these cases recovery was denied.

But these cases have no application to the facts in the case at bar. The deceased was preparing his car to carry him to his fireman's duty, it matters not whether to his morning inspection or to Omaha to his firemen's school. He was a 24-hour-a-day man and his car was the means of conveyance designated by the council and actually operated at the expense of the city. Great dependence is placed by the appellant upon the case of *Siedlik v. Swift & Co.*, 122 Neb. 99. In that case the injury was held noncompensable as not arising in the course of employment. The fact was that Siedlik was going to work at about 6:30 in the morning and stepped into a hole near the depot. He had not yet reported for duty. Generally speaking, he was going and coming on his own responsibility and on his own time. His going and coming had no connection with the duties of his employment, nor was what he did or failed to do in any way connected with his employer's business. The distinction is plain; we repeat that Struve was about his master's business in the way designated by his master and in the use of a car devoted to his master's business.

The following Nebraska cases give warrant to this conclusion: *Perry v. Johnson Fruit Co.*, 123 Neb. 558, *Tragas v. Cudahy Packing Co.*, 110 Neb. 329, and *Speas v. Boone County*, 119 Neb. 58. In the case last cited the court said that an injury is received in the course of employment when the workman at the time of the injury is engaged in work for which he is employed or work incidental thereto.

By legitimate inference from the facts proved we find that Mr. Struve came to his death while working for his employer within the scope of his employment and in the course of his duty.

An ultimate fact, fairly and reasonably inferable from facts and circumstances proved, is to be taken as established. *Perry v. Johnson Fruit Co.*, 123 Neb. 558.

It remains to consider the second contention of the appellant, namely, that the court erred in not finding that Struve's death was due to his own wilful negligence. Our statute provides that "wilful negligence shall consist of (1) deliberate act, or (2) such conduct as evidences reckless indifference to safety, or (3) intoxication at the time of injury, such intoxication being without the consent or knowledge or acquiescence of the employer or the employer's agent." Rev. St. 1913, sec. 3693, as amended by Laws 1917, ch. 85, sec. 23. The condition of the appellant therefore must be decided upon the definition of such conduct as evidences reckless indifference to safety. Certainly, "deliberate act" is not inferable from the evidence. A deliberate act would be a suicidal act; and Struve was no suicide but a fireman dead in the line of duty. He was in his prime, happily married, possessed of honorable and lucrative employment. He owed no money; he had no troubles save those of his busy and dangerous avocation. He was of cheerful disposition and full of the joy of life.

The term "reckless indifference to safety" has had approved definition in the holdings of this court. " 'Reckless indifference to safety' as used in the statute means more than want of ordinary care. It implies a rash and careless spirit, not necessarily amounting to wantonness, but approximating it in degree, a willingness to take a chance." *Farmers Grain & Supply Co. v. Blanchard,* 104 Neb. 637. Considering all of the circumstances and giving all of the evidence in the record its full weight and effect we have no difficulty in deciding that Struve's act was not wilful negligence. He may have taken a chance wittingly or unwittingly, but if he was negligent such negligence did not amount to wantonness or that which approximates it in degree. In the opinion of the court his negligence, if any, did not approach that of the injured man in the *Blanchard* case above cited. The man looked west and presumably saw the train approaching and then proceeded between the main and passing tracks

in the direction of the station at a dog trot. As he angled off he was struck by the engine. The district court reversed the award of the commissioner who found for the claimant. This court, however, reversed the district court and remanded the case with directions, the opinion being written by Letton, J.

Though the provisions of the compensation law should be carefully followed where the meaning and limitations of its language are plain, technical refinements of interpretation will not be permitted to defeat the law's effectual operation or its kindly and beneficial purpose. *Baade v. Omaha Flour Mills Co.*, 118 Neb. 445.

Finding, as we do, that Struve's death occurred while working for his employer and within the scope of his employment, and finding also that he was in no wise guilty of wilful negligence, we are of opinion that the award of compensation must be sustained. The court below was right in its disposition of the case and its decree should be and is

AFFIRMED.