ROBERT MILLER, APPELLEE, v. GEORGE AND MARY REISCH COMPANY, APPELLANT.

271 N. W. 853

FILED MARCH 12, 1937. No. 29948.

*Chambers & Holland,* for appellant.

*Craft, Edgerton & Fraizer, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and MESSMORE, District Judge.

PAINE, J.

This is an appeal from an affirmance of the district court of an award allowing compensation, after a hearing by one member of the compensation court, for eight weeks at the rate of $6 a week, and an allowance of $65 for medical expense, and $68 for hospital expense.

The two assignments of error are that the judgment is contrary to the law and contrary to the evidence. The defendant filed a certificate of waiver and election to appeal directly to the district court from such award of one of the judges of the Nebraska workmen's compensation court, as provided in section 48-174, Comp. St. Supp. 1935.

The plaintiff, Robert Miller, was employed by the George and Mary Reisch Company, the defendant corporation, in August to work on its ranch near Richland, Colfax county, at $20 a month, together with his board and room. Plaintiff was required to live on the ranch and to eat and room at the house of the ranch foreman, who was paid $15 a month for the board and room of each man. The foreman heard that some of the men, including the plaintiff, were dissatisfied with the meals, and on October 29, 1934, upbraided the plaintiff during the noon meal. The plaintiff replied, "Yes, I have been kicking, but I am not alone," and thereupon the foreman in great anger jumped up from the table and started for the plaintiff, saying, "You son-of-a-bitch, I'll make you smoke for it." The plaintiff, in trying to get away, stumbled and fell, and the foreman jumped on him, his knee coming down on the hip-bone and sliding into the abdomen. The plaintiff said he put his hands over his head and let the foreman hit him. One of the other employees

took the foreman off, and plaintiff immediately went to town to notify Mr. Reisch of this assault at his residence, where he was eating his noonday meal.

In response to the question, "What did you say to him?" he replied: "I told Mr. Reisch the occurrence that had happened at the table, and that I had been hurt, and he said he wasn't liable for his foreman's doings, but that he would think the matter over, and told me to go back out and go to work, and he would come out and talk it over with the boys."

Mr. Reisch on direct examination testified that plaintiff told him that "he didn't get any scratch at all," but on cross-examination admitted that the plaintiff had told him at that time about the same story he had told on the witness-stand.

Anton Hartman testified that he separated them, and that the foreman, Kerr, hit the plaintiff with his fist, but did not remember that he pummeled him with his knees on his body; that three or four days afterward he noticed plaintiff was limping, and claimed he got hurt in the fight. Hartman also testified that Mr. Reisch came out to the ranch the same afternoon and investigated the trouble.

The record also shows that plaintiff talked with Adolph Saalfeld, a storekeeper at Richland, about the assault, and Saalfeld said: "Why he come over to our place and he wanted board at our place; he said him and Mr. Kerr had a fight, and he wanted to know if he couldn't board over there." He further testified that plaintiff did not mention any injury he had sustained in the assault.

The record further shows that, prior to this assault, the plaintiff had run a nail into his foot and had received medical attention from the insurance company. After the assault he had filed another claim for compensation for injuries received on the ranch, which was also paid by the insurance company.

The plaintiff had, prior to that time, a very small hernia, and as a result of this assault the hernia immediately increased in size, pained him constantly, and he could not do

any heavy work without pain, but he did not seek medical attention until two or three weeks after the assault, but the doctor did not make an examination of the hernia at that time. The plaintiff later consulted a surgeon at Aurora, who on May 2, 1935, reduced the rupture by an operation, and he was unable to work for two months after the operation.

The assault which it was charged caused the hernia occurred October 29, 1934, and the petition was filed with the compensation court at Lincoln within one year thereafter, as required by section 48-138, Comp. St. 1929, and the hearing was held thereon before Judge Jackman, of the compensation court, on November 7, 1935.

The defendant insists that an assault by a fellow workman does not arise out of the employment, and cites *Urak v. Morris & Co.*, 107 Neb. 411, 186 N. W. 345, and *Pierce v. Boyer-Van Kuran Lumber & Coal Co.*, 99 Neb. 321, 156 N. W. 509, but this last case is overruled in *Socha v. Cudahy Packing Co.*, 105 Neb. 691, 181 N. W. 706.

In *Stanolind Pipe Line Co. v. Davis,* 173 Okla. 190, 47 Pac. (2d) 163, an employee was assaulted by discharged employees who were drunk, and it was there held that the injury did not arise out of the employment.

Also, in *Indian Territory Illuminating Oil Co. v. Lewis,* 165 Okla. 26, 24 Pac. (2d) 647, where an employee was shot and robbed by a desperado while working on his books at the office in the evening, compensation was denied, as there was no causal connection between the conditions under which the work was to be performed and the resulting injury.

Each of these cases can be clearly distinguished from the case at bar.

In *Willis v. State Industrial Commission,* 78 Okla. 216, 190 Pac. 92, an employee was warming himself by a fire on the premises of his employer and was injured by the explosion of a dynamite cap thrown in the fire by a fellow employee, and it was held that he could recover. It is set out in that opinion that the correct rule is that, where a

workman is injured in horseplay in which he is an active participant, he is not entitled to recover, but if while he is going about his duties he is a victim of another's prank, to which he is not in the least a party, he should not be denied compensation.

An erecting engineer, working in the refrigerator room of a hospital, where he had been sent by his employer, was given some ice cream by the janitor, from which he contracted smallpox and died. The employer defended on the ground that eating ice cream was outside the scope of his employment. The Wisconsin court allowed compensation and held that eating ice cream was simply a refreshment, the same as taking a drink of water, and was not forbidden by the employer, and was within the scope of his employment. *Vilter Mfg. Co. v. Industrial Commission,* 192 Wis. 362, 212 N. W. 641, 57 A. L. R. 627.

An employee, going to get a drink of water, was injured in alighting from a truck. The court held that he was at the moment of injury engaged in performing services growing out of, and incidental to, his employment. Compensation will not be denied because at the moment the injury is received the employee is not actually doing specific work assigned him. *Widell Co. v. Industrial Commission,* 180 Wis. 179, 192 N. W. 449. See, also, *Tragas v. Cudahy Packing Co.,* 110 Neb. 329, 193 N. W. 742; *Boyce v. Burleigh,* 112 Neb. 509, 199 N. W. 785.

A case very closely in point recites that, when an employee was eating his lunch in a factory, in accordance with long-existing custom, and a pile of crude rubber fell upon him and injured him, it was held that he was performing a service growing out of, and incidental to, the employment. *Racine Rubber Co. v. Industrial Commission,* 165 Wis. 600, 162 N. W. 664.

In *Struve v. City of Fremont,* 125 Neb. 463, 250 N. W. 663, we held that the city was liable when a fire chief was working on his own car in his own garage and was asphyxiated, as he used the car in his work as fire chief. In *Perry v. Johnson Fruit Co.,* 123 Neb. 558, 243 N. W. 665, a

traveling man, who used his own car in soliciting orders, was fatally burned while taping up a leaking gasoline line. This court held that his dependent was entitled to compensation. Perhaps the case of *Speas v. Boone County,* 119 Neb. 58, 227 N. W. 87, is as close as can be found in the state of Nebraska. A farmer was dragging roads for the county with his own teams, and stopped opposite his own driveway at 11:30 a. m., unhitched, and while putting his four horses in his own barn to feed them, he was kicked and injured by one of his horses. It was held that it was his duty to feed them and that the county was liable for compensation for the injury. In the case at bar, it was not only necessary for the plaintiff as a ranch hand to eat his dinner to keep up his strength, but he was required to eat such dinner in the home of the foreman, as such dinner was furnished as a part of his wages, so that the eating of the dinner was in the regular course of his employment. He had not abandoned his employment, he was at a place where he might reasonably be, and was fulfilling the duties of his employment, or doing something closely incidental thereto. The injury resulting from the assault of his foreman, while he was eating dinner furnished as a part of his wages, was not independent of the relation of master and servant, and the employee, under the liberal construction proper in such cases, was entitled to compensation as awarded by the compensation court and again by the district court.

Finding no error in the record, the judgment of the lower court is hereby affirmed, and attorney fees are allowed the plaintiff's attorney in this court in the sum of $50.

AFFIRMED.

CARTER, J., dissenting.

The record in this case shows that the physical encounter, which was alleged to have been the cause of the injury complained of, occurred on October 29, 1934. The claimant admits that he had a hernia prior to that time, but testifies that as a result of the encounter it was aggravated to such an extent that his intestines immediately passed into the

scrotum. It therefore stands admitted that any injuries sustained were immediate and in no way progressive. Claimant testifies that he notified Walter Reisch, the ranch manager, of his injuries on the day of the encounter. Walter Reisch positively denies that Miller at any time claimed that he was injured or that he had any notice of an injury until he received a letter from Miller's attorney on May 1, 1935.

Walter Reisch testified that Miller told him about the assault on October 29, 1934, and that Miller at that time stated that he "didn't get any scratch at all." The ranch foreman testified that Miller never complained to him that he had been injured, although he continued working on the ranch for six months after the injury is alleged to have occurred. The record also shows that Miller talked to W. A. Saalfeld, a storekeeper at Richland, about the assault on the day it occurred, and that claimant said, "I came out of it without a scratch; no ill effects or anything."

The record further shows that, prior to this alleged assault, the claimant had run a nail into his foot and had received medical attention from the insurance company. After the date of the alleged assault herein mentioned he had filed another claim for compensation for injuries received on the ranch and was paid by the insurance company. At the time of the filing of this claim for compensation he did not mention the fact that he had suffered a hernia nor claim compensation therefor. Claimant also testified that he consulted Dr. Evans of Columbus concerning his hernia about three weeks after the accident, but that Dr. Evans made no examination to determine whether there was a rupture or the extent of it if one existed.

Claimant's whole case, including the question of the giving of notice within six months of the date of the injury, is based entirely upon his own oral evidence. His evidence is totally lacking of corroboration. The testimony of defendant's witnesses, the long delay in filing his claim, the failure to corroborate the extent of his injury at a time when it would have been easy to have done so, the failure

to claim compensation when he filed a subsequent claim on another injury, the fact that he continued to work for six months and filed his claim immediately thereafter, all lead to a single conclusion—that claimant did not suffer the injury as alleged.

The writer of the majority opinion says that Walter Reisch admitted on cross-examination that the claimant had told him about the same story as he told on the witness-stand. This statement is not borne out by the record and I must emphatically state that the majority opinion is in error when it places such a construction on the cross-examination of the witness Walter Reisch. Permit me to quote the record, bearing in mind that Mr. Kerr is the ranch foreman and not the claimant: "Q. Mr. Reisch, Mr. Kerr was in that same afternoon, wasn't he? A. Yes, sir; he was. Q. And he described what the altercation was too, did he? A. Yes, he told about the same story. Q. And was that about the same story that the men have told here this afternoon, that he told you? A. Yes, sir. Q. Each one told it to you about as he has told it here? A. Yes, sir." It is quite evident that the writer of the majority opinion confuses notice of the altercation with the notice of injury that the statute requires.

If the notice required by section 48-133, Comp. St. 1929, may be proved by the evidence of the claimant as in this case, the provisions of the statute are completely nullified and become a meaningless jumble of words. The burden of proof is upon the claimant to prove that notice was given and that the injury arose out of and in the course of his employment. In my judgment, claimant has failed to establish either of these allegations by a preponderance of the evidence. It is quite evident that he wants the insurance company to now pay for an injury for which it is in no way responsible. For these reasons I respectfully dissent.