NORA B. SHEETS, APPELLEE, V. GLENWOOD TELEPHONE COMPANY ET AL., APPELLANTS.

280 N. W. 238

FILED JUNE 17, 1938.   No. 30352.

*Chambers, Holland & Locke,* for appellants.

*Roscoe S. Hewitt* and *Glenn L. Mace, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

DAY, J.

The first question presented to this court on appeal in this compensation case is whether the employee had a compensable injury. The compensation court denied an award, but on appeal to the district court an award was made.

Nora B. Sheets was employed by the telephone company as the operator at Ayr. Under an arrangement with the company, this small exchange was placed in her home and she was to care for it throughout the day. There was a loud alarm bell on the switchboard which would call her from other parts of the house and even the yard to attend to her duties there.

The question is presented to this court that the claim for compensation was barred by the statute of limitations. It is unnecessary to consider and determine the evidence as to this, however, because it is determined that this was not a compensable injury arising out of and in the course of her employment. The employee herself describes the accident in the following language: "I went out to the back porch to get a drink and also to put some milk or butter into the cooler we both used together. Of course, I knew it wouldn't take long as the board wasn't busy and the alarm was on. When I came back I stumbled or stepped on something and it threw me down and I fell on my hip and broke it." Mrs. Dykeman, a neighbor, was with her at the time, and states that she brought her milk and gave it to her in the kitchen and then started back, stopping at the

well. Ardell Bennett, the daughter of Mrs. Sheets, was also there. The group gathered around the well and put cream, milk and butter in the cooler and got some water in a pail and then each left the pump. When Mrs. Sheets was on the back porch of her home, visiting with her neighbor and daughter, getting a pail of water, and putting milk in the cooler at the well, she was not within the course of her employment. The alarm bell did not sound, calling her back to her duty as an employee of the telephone company, and there is no evidence in the record that she was returning to her duties as telephone operator for the company. Her purpose in going upon the porch was not incidental to any work of the company. The fact that she may have taken a drink while on the porch at the pump does not make her deviation from her duty incidental to her employment under the circumstances of this case. From the nature of her employment and the salary paid, it was not expected that she would work all of the time. It was in the nature of a part time job. It required her continued attention, but not her constant work. She lived in her own home and did the required work. It cannot be said in such a case that every household duty was within the course of her employment or incidental thereto.

It presents a different situation than *Miller v. Reisch Co.*, 132 Neb. 338, 271 N. W. 853, where one was held to be injured in the course of his employment who was assaulted by the foreman at the dining table where he was compelled to eat by his contract of employment, and as a part of his compensation. The facts in this case cannot bring it within the rule there announced that the eating of his dinner was incidental to his employment. It would require an unwarranted discussion to distinguish all the cases cited by the appellee, but suffice it to say that the facts of this case do not invoke the rules announced in *Tragas v. Cudahy Packing Co.*, 110 Neb. 329, 193 N. W. 742, where the employee was sharpening tools used in his work during the noon hour; nor of *Perry v. Johnson Fruit Co.*, 123 Neb. 558, 243 N. W. 655, where an employee, a traveling salesman, was

repairing his own automobile so that he could set out on a trip for the employer as was his custom; nor of *Struve v. City of Fremont,* 125 Neb. 463, 250 N. W. 663, where a fire chief was preparing to go to Omaha to attend a school as ordered by the city council. Especial attention has been given *Speas v. Boone County,* 119 Neb. 58, 227 N. W. 87, where an employee was kicked by a horse during the noon hour, while he was feeding his team at his own home. This case was discussed by Chief Justice Goss who wrote it, in *De Porte v. State Furniture Co.,* 129 Neb. 282, 261 N. W. 419, in which he said this case "goes as far as we have ever gone in holding an injury compensable when it did not occur during the time the workman was actually employed at his work, or actually within the area where his work was contracted to be performed and during the period he was employed at his work. But the feeding of his team by Speas was the usual incident of the noon hour and he was injured while preparing to feed them." There was not then, and there is not now, any intention of extending the course of employment so that all accidents suffered by a workman should be within the compensation law as arising from the employment. The legislature did not intend to impose such a liability upon employers, and this court acting within its proper sphere cannot do so. All of the cases called to our attention, including those mentioned, are distinguishable upon the facts. This court is committed to the view that, in order that an injury be compensable under the workmen's compensation law, it must arise out of and in the course of employment. *Suverkrubbe v. Village of Fort Calhoun,* 127 Neb. 472, 256 N. W. 47; *McNaught v. Standard Oil Co.,* 128 Neb. 517, 259 N. W. 517.

A sister state has stated the rule applicable to a situation such as this as, substantially, that there must be a causal connection between the employment and the injury before a recovery can be allowed on a disability arising out of and in the course of employment. *Christensen v. Hauff Bros.,* 193 Ia. 1084, 188 N. W. 851.

The authorities of this and other states support the view

that, where an employee deviates from her employment and is injured while engaged in her own business or employment, the injury is not compensable under the workmen's compensation law. *De Porte v. State Furniture Co., supra; Hammond v. Keim,* 128 Neb. 310, 258 N. W. 478; *McNaught v. Standard Oil Co., supra;* 71 C. J. 678.

The evidence in the record examined and establishes that accident and incidental injuries did not arise out of and in the course of employment.

REVERSED AND DISMISSED.

PAINE, J., dissenting.

Mrs. Sheets had been employed by the telephone company since 1923. She worked at the switchboard when necessary from 6:00 a. m. to 9:00 p. m., and after that she put on the alarm so she would hear it ring at night if she was away from that room, the switchboard being in her home. She had left the switchboard on this Sunday afternoon to get a drink—she may also have put some milk in the cooler—and in going back in the house she fell and broke her hip.

The opinion in this case holds that this accident did not arise out of, or in the course of, her employment. It is a very close question, but for my part I am inclined to take the other view.

Supporting this theory, I might briefly refer to the case of *Racine Rubber Co. v. Industrial Commission,* 165 Wis. 600, 162 N. W. 664, where a factory hand was eating his lunch in the factory and a pile of rubber fell upon him and injured him, and it was held that he was performing a service growing out of and incidental to his employment.

In another Wisconsin case it was said: "Going for a drink in the customary manner is within the rule permitting recovery under the workmen's compensation act for injuries received by an employee doing some act not prohibited and necessary or convenient to his health and comfort." *Widell Co. v. Industrial Commission,* 180 Wis. 179, 192 N. W. 449.

"That truck helper left employer's disabled truck * * * to go after drink of water did not remove him from 'course

of employment.' " *Alabama Concrete Pipe Co. v. Berry,* 226 Ala. 204, 146 So. 271.

In the case of *St. Louis, A. & T. R. Co. v. Welch,* 72 Tex. 298, 10 S. W. 529, 2 L. R. A. 839, a member of a railroad bridge gang was injured while sleeping in a bunk car provided by his employer, and the court held as follows: "The plaintiff at the time of the accident was asleep on a car belonging to the company, provided by it for that purpose, which was placed upon its side-track. He was liable to be called upon at any moment to go out with his gang upon duty upon the road. We think he must be held to have been upon duty at the time he received the injury. That the accident occurred when he was resting from his labors, we think makes no difference. He was subject to the call of the company at the time, and his case differs from that of other servants who engage for certain hours of employment and who are injured during the intervals in which the master has no claim upon their services."

In the text of the opinion in *Papinaw v. Grand Trunk R. Co.,* 189 Mich. 441, 155 N. W. 545, it is said: "Here it is shown conclusively that by his contract of hiring deceased was at the time of his death required to be within reach, liable at any time to be called to work upon the track, and in that sense on duty subject to his employer's orders and control."

In *Miller v. Reisch Co.,* 132 Neb. 338, 271 N. W. 853, we held that a ranch employee, who was beaten by his foreman when he was eating his dinner, was engaged in a service growing out of and incidental to his employment.

In *Kirkpatrick v. Chocolate Sales Corporation,* 127 Neb. 604, 256 N. W. 89, an employee was crossing the street to take a taxicab to go to the railway station, and was killed by an automobile, and it was held that he was in some duty incidental to his employment at the time he was injured.

The case of *Speas v. Boone County,* 119 Neb. 58, 227 N. W. 87, is often referred to. In this case a farmer was employed in dragging roads for Boone county, with his own teams, and stopped opposite his own driveway at 11:30

a. m., unhitched the four horses, and while putting his own horses in his own barn to feed them he was kicked and injured by one of them, and the county was held liable for his injury, because it was his duty to feed them.

Other cases in point may be cited: *Favorite v. Kalamazoo State Hospital,* 238 Mich. 566, 214 N. W. 229, where a nurse was injured by a fall in going from the hospital to the nurses' home after her duties were performed for the day; *Parson v. Murphy,* 101 Neb. 542, 163 N. W. 847; *Baade v. Omaha Flour Mills Co.,* 118 Neb. 445, 225 N. W. 117; *McGuire v. Phelan-Shirley Co.,* 111 Neb. 609, 197 N. W. 615; *Struve v. City of Fremont,* 125 Neb. 463, 250 N. W. 663.

This court has held that the workmen's compensation act is one of general interest, not only to the workman and his employer, but as well to the state, and that it should be liberally construed, and that technical refinements of interpretation should not be permitted to defeat it. The act does not contemplate that an employee is a mere machine, required to stay at a particular place. His comfort and safety are committed largely to his own judgment.

Mrs. Sheets was not required to sit at the switchboard all of the time. This accident occurred on Sunday, when there were fewer calls than usual. She stepped out on the back porch to go to a pump and get a drink, which she had a perfect right to do. If the alarm had sounded while she was at the pump, she would have responded instantly. That was a reason why the switchboard was in her home, to save expense.

In the case at bar, Judge Blackledge, the trial judge, found: "The plaintiff while engaged in the performance of her duties as employee of Glenwood Telephone Company, a corporation, on the 30th day of June, 1935, suffered an accident and injury which arose out of and in the course of her employment for the said defendant in Adams county, Nebraska, and is compensable." I am of the opinion that the finding of the district judge that the accident occurred during the course of her employment is amply sustained by the evidence and the authorities cited.