CHANCE WILBUR, APPELLANT, V. ADAMS LUMBER COMPANY, APPELLEE.

299 N. W. 268

FILED JULY 11, 1941. No. 31213.

*Beatty, Maupin, Murphy & Davis,* for appellant.

*Shuman & Overcash, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PAINE, J.

This is a workmen's compensation case. It was tried before Judge Welch, of the Nebraska workmen's compensation court, at North Platte, and the claim was denied and the petition dismissed. Upon appeal to the district court for Perkins county, it was tried at length, and after argument to the court a judgment was entered that the evidence is insufficient to establish that the accident arose out of or in the course of any employment of plaintiff, and plaintiff's petition was dismissed, from which judgment the plaintiff appealed.

The facts may be briefly stated as follows: Chance Wilbur lived at Grainton, Perkins county, and owned a team of horses and two wagons, and did hauling of various kinds. The Adams Lumber Company, defendant, has several lumber yards, one of which is located at Grainton. It employed as its regular drayman Pat Gartrell, who used a small pickup truck in doing its work, but it was not large enough to handle this job. Gartrell was employed to unload this car of lumber at 50 cents per thousand feet, and he employed Wilbur to haul the lumber from the freight car to the lumber-yard, for which he agreed to pay Wilbur the going wages, i. e., whatever was right. Gartrell told Wilbur to be ready to start unloading the car on Monday morning.

Wilbur lived in town, but kept his team and wagons about half a mile north of town at the barn of his brother-in-law. He reported to Gartrell with his team and the running-gears of his two wagons. The plan followed in this work was about as follows: Gartrell pushed the lumber out of the car, and Wilbur loaded it on one of the running-gears of his two wagons, and would then drive the running-gears loaded with lumber to the yard of the Adams Lumber Company, where employees of the lumber company would unload the running-gears, during which time Gartrell and Wilbur would be loading the other set of running-gears at the car. In hauling lumber from the track, Wilbur used a public road for a short distance which was the same road as led to the barn where he kept his horses.

Proceeding in this manner, they worked until it was growing dusk in the evening, and after they had hauled their last load and quit work for the night, the plaintiff went out on the highway with his team, and talked for a moment to a man he met there about getting a job of shucking corn, and then proceeded in another direction, and when he reached an intersection of two highways an automobile driven by a farmer named Baker crashed into him, hurling Wilbur through the air, and resulting in injuries of a compound fracture of the right femur, a fracture of the left tibia, a brain concussion or fracture, five teeth were knocked

out, an ear partly torn off, and numerous other cuts and abrasions. As a result of these injuries, he remained in a hospital at North Platte for six months, then spent several months in a wheel-chair, is unable to do any manual labor, suffers constant pain, and has been crippled ever since the accident.

This accident happened within about a block of the lumber-yard, and was on a direct route from the lumber-yard to where he kept his team in the barn north of town, but was different from that used in unloading lumber. He had not completed his employment, but was to return the next day with the same team and complete the job.

It appears that Pat Gartrell had no compensation insurance, and the lumber company did carry such insurance.

The question to be decided is, did this unfortunate accident arise out of plaintiff's employment with the Adams Lumber Company? It is argued by the plaintiff that, when a man is employed with his own team and wagon, and while he is on his way to his barn to put away his team, if he is injured, the accident arises out of his employment, and this is particularly true because the compensation law specifically provides that it must be given a liberal construction.

Plaintiff argues at length that this case is on all fours with the case of *Speas v. Boone County,* 119 Neb. 58, 227 N. W. 87. An examination of this case shows that it was tried by Judges Lightner and Spear in the district court, and the opinion in this court was written by Chief Justice Goss in 1929, and after two arguments in the supreme court the award of compensation was affirmed as arising out of the course of his employment, and, in addition, attorney's fees were allowed in both courts. Speas was employed by Boone county to use his teams in dragging the highway. At 11:30 in the morning he ceased dragging because he was then directly in front of his own home, and drove the four horses into his own barn, and in going past one of them to tie it the horse kicked him, causing severe injury. This accident was reported at once to the county foreman under whom he worked. He had not completed his work, but would continue

it in the afternoon. He was paid for the use of the team, and it was his duty to feed them at noon to be ready for the afternoon's work. This court rejected the argument that his employment ceased when the horses had reached their stalls, and also that his employment ceased during the noon hour. These claims were rejected because the compensation law is to be liberally construed in favor of the workman.

Other cases cited by the appellant as being closely in point are: *Perry v. Johnson Fruit Co.,* 123 Neb. 558, 243 N. W. 655; *Miller v. Reisch Co.,* 132 Neb. 338, 271 N. W. 853; *Struve v. City of Fremont,* 125 Neb. 463, 250 N. W. 663; *Kirkpatrick v. Chocolate Sales Corporation,* 127 Neb. 604, 256 N. W. 89.

The defendant calls our attention to an amendment of the workmen's compensation law, made in 1935, found in section 48-174, Comp. St. Supp. 1939, which provides: "Provided, that a judgment, order, or award of the district court may be modified or set aside only upon the following grounds: * * * (3) That the findings of fact are not conclusively supported by the evidence as disclosed by the record, and if so found, the cause shall be considered *de novo* upon the record."

The defendant argues that, under this provision, if the findings of fact *are* conclusively supported by the evidence, this court need not try the case *de novo*. *Schirmer v. Cedar County Farmers Telephone Co.,* 139 Neb. 182, 296 N. W. 875.

The finding of the district court is to the effect "that the evidence is insufficient to establish that the accident complained of by plaintiff arose out of or in the course of any employment of plaintiff."

The evidence discloses that in a conversation between manager Brittain and Gartrell, with no one else present, the job was given to Gartrell, and at another time and place Gartrell asked plaintiff if he would help him unload the lumber at "going wages." After the accident Gartrell paid plaintiff's family $5 for the day's work.

Plaintiff brought suit against the Adams Lumber Company on the theory that the plaintiff was an employee of

Gartrell, an independent contractor, who carried no liability insurance.

When one employs an uninsured contractor in Nebraska, he becomes, by virtue of section 48-116, Comp. St. 1929, a statutory contractor, and is entitled to the protection of every statutory provision as to what acts are covered and what are not.

The defendant having agreed to pay a flat price of 50 cents per thousand feet for bringing the lumber into its yard, its employees did the rest. Gartrell and Wilbur had quit working for the night on this piece job. Gartrell left the job in one direction, and plaintiff left in another. He engaged in business of his own in trying to get a job shucking corn; then he starts in another direction on a public highway, and the accident occurs.

The defendant argues that plaintiff and Gartrell went into the job on shares, and were to divide what they got, and were partners in a joint adventure. In any event, the defendant lumber company could only be held liable if the accident occurred while plaintiff was actually rendering service to it at the time of the accident.

A recent discussion of this point occurs in *Burlage v. Lefebure Corporation,* 137 Neb. 671, 291 N. W. 100, as follows:

"Liberal construction of the workmen's compensation law to give effect to its purpose is a rule too well settled to admit of controversy, but the statute cannot be liberalized by judicial interpretation to allow noncompensable claims. By a long line of decisions the law on the burden of proof has been held to be as follows:

" 'Burden of proof rests upon plaintiff, in cases arising under workmen's compensation law, to prove with reasonable certainty that the employee met with an injury or death in an accident arising out of and in the course of his employment.' *Porter v. Brinn-Jensen Co.,* 131 Neb. 611, 269 N. W. 96, and cases cited in opinion. Comp. St. 1929, sec. 48-101."

The *Speas* decision is one of those cases described as a "noon-hour" case, in which injuries were sustained during

a temporary cessation of work. *Miller v. Reisch Co., supra; Tragas v. Cudahy Packing Co.,* 110 Neb. 329; 193 N. W. 742; 71 C. J. 738.

"To be compensable under the workmen's compensation law, an injury to an employee must arise out of and in the course of employment." *DePorte v. State Furniture Co.,* 129 Neb. 282, 261 N. W. 419.

In the above opinion, written by Judge Goss, compensation was refused for a noon-hour accident, and the *Speas* case was distinguished by the one who wrote it.

However, this court has held that, when a man has left his work, he cannot ordinarily recover for injuries. *Siedlik v. Swift & Co.,* 122 Neb. 99, 239 N. W. 466; *Sheets v. Glenwood Telephone Co.,* 135 Neb. 56, 280 N. W. 238.

"Where an employee leaves the place where his duties are to be performed or where his service requires his presence to engage in a personal objective, not incidental to his employment, the relation of employer and employee does not exist until he returns to a place where by the terms of his employment he is required to perform service." *McNaught v. Standard Oil Co.,* 128 Neb. 517, 259 N. W. 517. See, also, *Bell v. Denton,* 136 Neb. 23, 284 N. W. 751; *Morey v. City of Battle Creek,* 229 Mich. 650, 202 N. W. 925; *Jarman v. Trucking, Inc.,* 286 Mich. 492, 282 N. W. 218.

In a somewhat similar case, where plaintiff was employed by the county in improving a highway, and furnished his own labor and horses, after his work had ceased, and at some distance therefrom, he was injured while en route home on the public highway. It was held that plaintiff was not entitled to compensation from defendant for such injury, as the injury did not arise "in the course of employment." *Kary v. North Dakota Workmen's Compensation Bureau,* 67 N. Dak. 334, 272 N. W. 340.

Although we have reviewed much of the evidence in this case because of the close questions involved, we have reached the decision that the holding of both the compensation court and of the district court in rejecting the claim was the only conclusion which can be reached in the case.

There is no dispute as to any material fact in the case, and under our decisions we cannot see how the defendant can be legally held for this accident, which occurred after plaintiff had left his employment for the night and was on his way home.

AFFIRMED.