ARLENE HARDIN, APPELLANT, V. MOORMAN MANUFACTURING COMPANY, APPELLEE.

140 N. W. 2d 820

Filed March 11, 1966. No. 36140.

James E. Schneider and Rush C. Clarke, for appellant.

Maupin, Dent, Kay & Satterfield, Clinton J. Gatz, Donald E. Girard, and Rady A. Johnson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

CARTER, J.

This is an action for benefits under the Nebraska Workmen's Compensation Act. The case was first heard before a single judge of the compensation court, who, after hearing, entered an award for the plaintiff. An appeal from this award was taken directly to the district court for Lincoln County. After trial in the district court,

that court found that the accident did not arise out of and in the course of the employment, and dismissed the plaintiff's petition. The plaintiff has appealed to this court.

The plaintiff is the widow of Conrad W. Hardin, who was killed in a one-car accident about 3 miles south of North Platte, Nebraska, on U. S. Highway No. 83, on September 27, 1963. It is not questioned that the deceased was killed in the accident as alleged. The only issue is whether or not he was killed in an accident arising out of and in the course of his employment with the Moorman Manufacturing Company, his employer.

The evidence shows that on February 22, 1963, the deceased entered into a written contract of employment with the defendant company to solicit orders for its products from its customers and prospective customers as directed by the company and its authorized representatives. The deceased was to be paid a commission on all products sold. He was to work days and hours of his own choice, in other words, no working days or hours were fixed by the company. While the contract in evidence shows that it was entered into on February 22, 1963, the evidence shows that the deceased commenced work for the company on March 23, 1962. The discrepancy is not explained in the record.

The evidence shows that the company was engaged in the sale of commercial feeds for livestock. At the time of his employment the deceased was informed that he would need a truck for the delivery of feeds to customers. He purchased a used pickup truck for this purpose which he traded subsequently for a new pickup truck, which was being used at the time of the accident. The truck was owned by deceased and his wife. Deceased was to furnish and maintain his own truck, and pay its operating expenses, his commission on sales being the only remuneration for his services.

The evidence shows that on the morning of the day of the accident deceased told his wife that he was going

to Ogallala to borrow some cattle mineral feed, that he obtained 40 50-pound bags, and delivered one-half ton of it to a customer in Hershey. At 12 noon he entered a bar in Maxwell and drank a can of beer. At about 1 p.m. he entered a bar in North Platte where he remained until 5:20 p.m. The owner of the bar testified that he drank at least 3 bottles of beer before the owner left the bar at 3:30 p.m. A female bartender came to work at 4 p.m. She testified that deceased was there drinking with friends and having a good time. She testified that she served him several mixed drinks of whisky and Seven-up. She says the wife of deceased came into the bar about 5 p.m. and that they went out together.

Arlene Hardin, wife of deceased, testified that she drove the family car from her home in Hershey to her sister's home in North Platte during the forenoon, left the car because it was not operating well because of a faulty transmission, and went to Cozad with her sister to visit relatives. On their return to North Platte she saw the pickup truck parked on the street near the bar. She left her sister's car, looked for deceased, and found him in the bar. She asked him to check the family car and they left the bar together. Deceased got in the pickup and drove to the home of his wife's sister, followed by plaintiff and her sister in the latter's car. Deceased got in the family car, drove it away, was gone 5 or 10 minutes, and returned. He told the plaintiff the car would get her to their home in Hershey. He then left in the pickup without stating where he was going. Both ladies testified that there were 15 or 20 bags of feed in the pickup when the deceased left at about 5:45 p.m.

At about 6:30 p.m. deceased drove the pickup into a Frontier service station at the south edge of North Platte. He informed Robert Williams, the owner of the station, that the pickup was not operating properly. It appears that a part of the station building was operated by Darrell Sommers as an automobile repair shop. Som-

mers had gone home. Williams called Sommers by telephone and he came down to the repair shop within 20 or 30 minutes thereafter.

In the meantime Robert Bailey, a regular customer, came into the station to purchase gasoline for his car. Bailey was an automobile mechanic not in any way associated with the gas station or repair shop. Williams asked him to check deceased's pickup. Deceased made the same request. Bailey checked the pickup. He then drove the pickup, accompanied by deceased, for a distance of approximately 7 miles. He told decedent he could find nothing wrong with the truck. After their return to the gas station, Sommers checked the truck, and after so doing, he drove it several miles, accompanied by Timothy George, a friend of Sommers. Upon their return deceased got in the pickup and invited the others to go with him, to show them, as he said, how it performed. Sommers remained in the pickup. George got out because, as he said, he thought deceased was going to drive too fast.

There is evidence that deceased was under the influence of liquor. There was also evidence that deceased had a bottle of whiskey on his person from which he invited the others to drink. There was evidence that his speech was blurred and that he staggered when he walked. The evidence shows that there were 15 or 20, or more, bags of feed in the pickup when deceased drove it away, accompanied by Sommers. No witness saw them again prior to the fatal accident.

The accident occurred at about 7:15 to 7:30 p.m. on U. S. Highway No. 83 about 3 miles south of the Frontier service station which is located on the same highway. There was evidence the pickup had rolled over one or more times. Several witnesses testified that they were in and about the scene of the accident. Between 4 and 6 sacks of feed, all broken, were seen near the accident. The evidence sustains a finding that 4 to 6 sacks of feed bearing the defendant's brand were all that was

found at the scene of the accident. The trial court found that the proof of intoxication was insufficient to sustain a finding that deceased was drunk or intoxicated at the time of the accident. No cross-appeal having been taken, we shall not consider this issue on this appeal.

There are two issues in the case: (1) Whether or not the maintenance and road testing of the pickup, under the circumstances shown, were incidental to the employment of the deceased; and (2) whether or not the unaccounted-for disappearance of the 15 sacks of feed creates a reasonable inference that deceased was performing acts incidental to his employment at the time of the accident.

It is the contention of the plaintiff that, as the use of a truck was needed to perform the work of his employment, its repair and maintenance, even though a responsibility of deceased, were incidental to the employment. The evidence shows that deceased used the pickup in delivering feed and soliciting customers, as required by his employment contract. Deceased also made personal use of the pickup, as did the plaintiff.

The deceased was required to use the pickup in the employer's business and it was his responsibility to keep it in repair. Pursuant to this responsibility he drove the pickup to the gas station on his own volition. It was his responsibility to maintain his truck in any manner that he chose. The duty of the deceased under his contract of employment was to deliver feed and solicit customers for his employer, the repair of the pickup being no part of the employer's obligation. It is the general rule that where an employee is to provide and maintain a vehicle for use in his employment, the repair of the vehicle is a part of his responsibility to furnish and maintain it, and involves no responsibility or liability on the part of his employer. Pappas v. Yant Constr. Co., 121 Neb. 766, 238 N. W. 531.

There is, however, an exception to the general rule. Even though an employee is required to furnish and

maintain a vehicle at his own expense, the repair of the vehicle made necessary during the rendition of service to the employer arises out of and in the course of the employment. Plaintiff relies upon this principle and cites Perry v. Johnson Fruit Co., 123 Neb. 558, 243 N. W. 655, and Struve v. City of Fremont, 125 Neb. 463, 250 N. W. 663, in support thereof.

In the Johnson Fruit Company case Perry was a traveling salesman in the employ of the Johnson Fruit Company on a monthly salary. Perry furnished his own automobile and was paid $35 a week for expenses and the use of the automobile. At 7 a.m. on the day of the accident Perry left his home in performance of his duties of soliciting and receiving orders from customers. He returned home about an hour later and was informed by his wife that a customer had telephoned an order for a quantity of candy. Perry had the candy on hand in his home, which he obtained for the purpose of filling the order. Having some difficulty with his automobile, he undertook to fix it before leaving to deliver the candy. During his attempt to fix the automobile there was a fire or explosion which caused his death. In holding the injury compensable the court said: "From the facts and circumstances disclosed * * * he was engaged in making minor repairs and adjustments upon the automobile used by him in the employer's business, and on premises where his services required his presence as a part of his service as such employee at the time of the injury, and during the hours of service as such employee; and that making of such repairs and adjustments was incidental to, and his injuries arose out of and in the course of, his employment by the defendant, * * *."

In the City of Fremont case Struve was the fire chief of the Fremont fire department. He was assigned a regular shift but was on call for duty at all times. He went to the fire station early and late. On the day of the accident he was going to Omaha to attend a convention and firemen's school specifically authorized by

the city council. He got up early, telling his wife he could not sleep any longer and that he was going up to the fire station for a minute. He was found dead of monoxide gas poisoning in his garage. The hood of the car was up and the car was running. In sustaining an award of compensation, this court said: "The deceased was preparing his car to carry him to his fireman's duty, it matters not whether to his morning inspection or to Omaha to his firemen's school. He was a 24-hour-a-day man and his car was the means of conveyance designated by the council and actually operated at the expense of the city. * * * The distinction is plain; we repeat that Struve was about his master's business in the way designated by his master and in the use of a car devoted to his master's business."

The distinction between these two cases and the one at bar is also plain. In the two cases cited, the employees were shown by evidence to have been engaged in their employers' business at the time of the accident. In the case before us the pickup was used both in the business of the employer and for personal use. Prior to the repair, deceased had been drinking in a bar until he was called by his wife to check out their private automobile. There is no evidence whatever that deceased had been or was performing any service for the employer immediately prior to or at the time he was entering the gas station. In repairing and testing the pickup the deceased was performing acts of maintenance under his responsiblity to furnish and maintain the pickup. The burden of proof is upon the plaintiff to show that the repairs were incidental to service for the employer and not pursuant to the personal responsibility of deceased to furnish and maintain the pickup. Such evidence is entirely lacking. Under such circumstances the deceased must be deemed to have been engaged in his personal affairs in having the pickup repaired and road-tested.

The plaintiff contends also that deceased was engaged

in the employer's service because of the inference to be drawn from the disappearance of approximately 15 bags of cattle mineral feed between the time he left the gas station and the time of the accident. The evidence shows that deceased had about 20 bags of feed in the pickup when he left the gas station and that only 5 bags or so were found at the scene of the accident. The evidence shows that it was not unusual for the deceased to have unsold feed in the pickup. When deceased left the gas station with Sommers he announced his purpose was to demonstrate how the pickup performed. The commercial feed in the pickup was not mentioned in any way. The evidence of the witness George is that he came to the station at 6:30 p.m. Bailey and deceased had already road-tested the car for 6 or 7 miles, arriving back at the station about 6:45 p.m. Sommers and George then tested the pickup by driving it 3 or 4 miles. George testified that Sommers and deceased left in the pickup 15 or 20 minutes after Sommers and George returned to the gas station. After giving consideration to the approximations of time testified to by the witnesses, it would appear that the accident occurred 15 to 30 minutes after Sommers and deceased left the gas station on their fatal drive. The accident occurred 3 miles south of the gas station. The pickup was headed north toward North Platte at the time of the accident. How far they went south of the scene of the accident before returning north is not shown and evidently there was no way to determine this fact. As we have stated, the evidence shows that there were 20 or more sacks of feed in the pickup when it left the gas station and approximately 5 sacks were found at the scene of the accident. The disappearance of the 15 sacks is wholly unaccounted for in the record. The plaintiff contends that the evidence sustains a reasonable inference that it was delivered to a customer, or otherwise disposed of by the deceased in the course of his employment. We do not think the evidence sustains any such inference.

We suggest that, so far as this record shows, the 15 sacks of feed could have been delivered to a customer in North Platte before deceased drove south. Plaintiff contends that similar possibilities suggested by the trial court in its memorandum opinion are based on pure speculation. We think plaintiff is correct in this respect, but these speculative statements are no different than those on which the plaintiff asks this court to draw a reasonable inference that the feed was delivered to a customer. The statement of the deceased as to the purpose of the fatal trip, the time element involved, the lack of any statement indicating service to the employer, the nonaccountability for the disappearance of the 15 bags of feed, and deceased's activity during the afternoon of the day of the accident, considered together, point towards the carrying out of his personal affairs rather than the performance of service for his employer. Plaintiff's allegations on this point are not sustained by a preponderance of the evidence.

An award of workmen's compensation benefits cannot be based alone on speculation and conjecture. Hammond v. Doctor's Hospital, 145 Neb. 446, 17 N. W. 2d 9; Klentz v. Transamerican Freightlines, Inc., 173 Neb. 53, 112 N. W. 2d 405. The burden of proof is upon the plaintiff to establish by evidence the facts essential to a recovery. Klentz v. Transamerican Freightlines, Inc., *supra*. This the plaintiff has failed to do. An inference to be drawn from facts to establish liability for the payment of benefits under the Nebraska Workmen's Compensation Act must be a reasonable one. An inference based solely on speculation or possibility will not sustain an award of compensation.

The trial court having come to the same conclusion as this court, the judgment of the district court is affirmed.

AFFIRMED.