FRANK W. BELL, APPELLANT, V. LOUIS DENTON, DOING BUSINESS AS TALMAGE MILLS, APPELLEE.

284 N. W. 751

FILED MARCH 17, 1939. NO. 30559.

*Lloyd E. Peterson,* for appellant.

*Tyler & Frerichs, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

This is an appeal from an order of the district court for Otoe county, entered July 23, 1938, setting aside an award made to the plaintiff in the workmen's compensation court, for the reason that plaintiff failed to show with reasonable

certainty that his accidental injury arose out of and in the course of his employment, and that the plaintiff had failed to sustain the burden of proof required of him by law. From this order plaintiff appeals.

The question to be decided is whether or not the injuries received by plaintiff in an accident arose out of and in the course of his employment, within the meaning of the workmen's compensation law.

Defendant Denton, owner of the Talmage Mills, dealing in flour and feed, had employed the plaintiff as a traveling salesman for 14 years, furnishing him with an automobile and paying all expenses incident to its maintenance and operation in the performance of plaintiff's work. The plaintiff worked on a commission, and in addition was to receive $5 a week for making deliveries. The process of taking orders was made in triplicate in an account book, one slip for the customer, one for the mill, and one remaining in the book of the salesman. Deliveries ordinarily were made subsequent to the soliciting of orders, and when collections were made the money was delivered to defendant. The territory covered by plaintiff was within a radius of 60 to 75 miles from the mill and comprised towns in Nebraska, Missouri and Iowa. Before starting upon the territory each day, plaintiff and defendant would talk over and decide upon the territory to be covered. Plaintiff was apparently under the direction of the defendant. There was no specified time in which he was to complete each day's work. The territory was covered in a 1936 Chevrolet pick-up truck, of 3,000-pounds capacity, and often additional merchandise was carried in the truck to supply any purchaser in the territory. The evidence as to the condition of the truck on the day the accident occurred is insufficient to disclose that defective mechanism of the truck caused the accident in question.

On May 10, 1937, 8 or 10 cases of pancake flour were loaded on the truck at the mill, and plaintiff started out to cover certain towns in his territory, arrived in Nebraska City between 4 and 5 o'clock p. m., called on customers

there, and then went to the Olympia Café for supper. He completed his supper shortly before 6 o'clock. While in the café he met Paul Winton, proprietor of the Pine Ridge Tavern. While there, a telephone call came for Mr. Winton, who told plaintiff that Mrs. Winton had called him about some Indians or Gypsies who wanted to camp at the farm. Plaintiff stated that he had been around Indians some place and he would like to go out and see them, and, in addition, he told Mr. Winton that if his son Bruce, who was in Omaha, came in, for him, Winton, to bring him out to the farm. Plaintiff went to the tavern, which was three and a half miles south of Nebraska City, and when he entered asked Mrs. Winton about the Indians. Subsequently he met a former customer from Cook, Nebraska, and they sat in a booth, drank beer and talked for about an hour, and at different times the plaintiff would dance with Mrs. Winton and with a girl who worked at the tavern. Plaintiff testified that he stayed at the tavern for about an hour. Mrs. Winton testified that he was there for about two hours. During this time he requested Mrs. Winton to call the Olympia Café in Nebraska City and ascertain if his son Bruce had arrived. Pursuant to this request, she did call and learned that Bruce had arrived. She suggested that his father desired him to come out to the tavern. Bruce having no means of conveyance, his father directed Mrs. Winton to say that he would come in and get him. Plaintiff is also reported to have stated that he would be back. The foregoing testimony is fairly well corroborated by four witnesses.

The plaintiff then left the tavern and started for Nebraska City. He testified that when about a mile and a half south of Nebraska City he went around another automobile, turned back into his side of the road, "and the car seemed to pull to one side, and I thought I had a flat tire or blow-out and it pulled up on the shoulder and went over the bank," resulting in serious injury to plaintiff. He was removed to a hospital in Nebraska City in an ambulance about 8 o'clock in the evening.

Plaintiff testified that on May 1, 1937, while in Nebraska City, he called at the Grand Hotel, which had been a customer for a year or so, for the purpose of selling pancake flour; that the chef told him that the next time he came to bring him a case. No written order was taken. Plaintiff was in Nebraska City on May 8 and for two hours on Monday, the 10th, prior to the time of the accident in question, but did not deliver the case of pancake flour to the Grand Hotel. He further testified that he would be through Nebraska City two or three times a week, going into other territory. The Pine Ridge Tavern was not a customer of his, and there was no particular reason, except for his own amusement, that he should go there. Nothing was said by plaintiff and the proprietors of the tavern that in any manner had to do with the business in which plaintiff represented the defendant. No business was transacted with the former customer.

After the plaintiff was injured his son Bruce worked for defendant for a period of three weeks, and he delivered a case of pancake flour to the Grand Hotel after having previously told the defendant of the statement, made to him by his father at the hospital, with reference to the sale. There is some evidence of pancake flour being found near the truck after the accident,—four or five 5-pound packages. Bruce testified that he had no arrangement to meet his father that night. At the hearing before the compensation commissioner, plaintiff testified that he had finished his business in Nebraska City. Plaintiff stated that his reason for stopping at the Pine Ridge Tavern was that he thought about the pancake flour and that he had not delivered it to the hotel; that he drove to the tavern "and turned around and come back out." This statement is not corroborated, because he did stay in the tavern for a period of time, as shown by the great weight of the evidence.

Plaintiff's injuries were a fractured vertebra in the neck and one in the back, three ribs broken, a cut over the back of his head, and ruptured blood vessels in his foot. His wages averaged a trifle over $100 a month.

It is well established that the burden of proof is upon the claimant to prove that accidental injuries received by him arose out of and in the course of his employment. The rule, in substance, has been announced in *Pensick v. Boehm,* 124 Neb. 28, 244 N. W. 923; *Kuhtnick v. Carey,* 124 Neb. 762, 248 N. W. 89; *Mullen v. City of Hastings,* 125 Neb. 172, 249 N. W. 560; *Saxton v. Sinclair Refining Co.,* 125 Neb. 468, 250 N. W. 655; *Price v. Burlington Refrigerator Express Co.,* 131 Neb. 657, 269 N. W. 425; *Porter v. Brinn-Jensen Co.,* 131 Neb. 611, 269 N. W. 96; *O'Connor v. Abbott,* 134 Neb. 471, 279 N. W. 207; *McCall v. Hamilton County Farmers Telephone Ass'n,* 135 Neb. 70, 280 N. W. 254.

It is likewise well established in this state that an injury to be compensable under the workmen's compensation law must be received out of and in the course of the employment. There must be a causal connection between the employment and the injury before recovery can be allowed, and the disability must arise out of and in the course of the employment.

The evidence in the instant case shows that when plaintiff left the Olympia Café for Pine Ridge Tavern he deviated from his employment and was at the tavern for his own amusement, and when he left to return to Nebraska City, presumably to deliver a case of pancake flour to the Grand Hotel, he, in reality, was going after his son Bruce, who was not in the employment of defendant, and for whom the defendant was in no way obligated to furnish transportation. Plaintiff had ample opportunity on previous occasions to deliver the case of pancake flour to the Grand Hotel, as shown by the evidence. He had not resumed his employer's business at the time of the accident resulting in his injuries.

Where an employee deviates from his employment and is injured while on his own business and enjoyment, the injury is not compensable under the workmen's compensation law. See *Sheets v. Glenwood Telephone Co.,* 135 Neb. 56, 280 N. W. 238.

Subdivision (c) of section 48-152, Comp. St. Supp. 1937,

in part reads: " 'Personal injuries arising out of and in the course of employment,' it is hereby declared * * * not to cover workmen who on their own initiative leave their line of duty or hours of employment for purposes of their own." Where an employee breaks the continuity of his employment and is injured before he brings himself back into the line of his employment, the injury does not arise out of and in the course of his employment.

The cases cited by the plaintiff are distinguished from the case at bar particularly in the facts. The most pertinent cases cited may be briefly summarized as follows:

In the case of *Perry v. Johnson Fruit Co.*, 123 Neb. 558, 243 N. W. 655, the employee, a traveling salesman, was repairing his automobile so that he could start out on a trip for his employer, as was his custom. In the case of *Struve v. City of Fremont,* 125 Neb. 463, 250 N. W. 663, a fire chief was preparing to attend a firemen's convention, as ordered by the city council. In the case of *Kirkpatrick v. Chocolate Sales Corporation,* 127 Neb. 604, 256 N. W. 89, the employee, a division superintendent of the company, whose duties required him to travel, left his home at 8 o'clock on the day in question, went to his office to perform services for his employer, and while in that service, in going for a taxicab to take him to a railway station where he intended to board a train for Lincoln, he was struck by an automobile and fatally injured. Recovery was permitted. There is nothing in the record to indicate that he started for Lincoln for his own pleasure or business. He at all times was engaged in the business of his employer, which distinguishes the case from the one at bar.

The workmen's compensation law accepts as an inevitable condition of industry the happening of accidents. Its outstanding purpose is to shift from the employee to the industry the burden of economic waste or loss, arising out of and in the course of employment. It is a law of general interest, not only to the workman and his employer, but to the state as well, and, being remedial in its nature, it should be construed so that technical refinements of inter-

pretation will not be permitted to defeat it. At the time of its passage and approval the law did not contemplate extending, and there is now no intention to extend, the course of employment so that all accidents suffered by a workman should be within the scope and arise out of his employment. The legislature did not intend to impose such a liability on employers, and this court, acting under its proper sphere, cannot do so. The work contemplated, to permit a recovery, must arise out of and in the course of the employer's business,—some duty which the workman is employed to perform or a duty incidental to that work. If incidental, it must be incidental to the main character of the business for which the employee was engaged by the employer. It cannot occur independent of the relation of master and servant. In the instant case, the plaintiff did not sustain the burden of proof required of him by law, and the judgment of the district court must be sustained.

Plaintiff filed a motion for a new trial, setting forth newly discovered evidence. We have examined the motion and affidavits in support thereof and are forced to the conclusion that the plaintiff has failed to sustain his case and to assume the burden of proof required of him, even in view of the consideration of such newly discovered evidence, as contended by him. There was no prejudicial error in the overruling of the motion for a new trial.

The plaintiff contends that a certified transcript of the pleadings and orders of the compensation court is necessary to give the district court jurisdiction of an appeal from a decision of one judge of the compensation court, where a rehearing before the full court is waived.

Section 48-174, Comp. St. Supp. 1937, prescribes the general procedure in compensation cases. The same authorities cited by the plaintiff and the defendant in the instant case were cited and presented to this court in the case of *Hansen v. Paxton & Vierling Iron Works*, 135 Neb. 867, 284 N. W. 352, which is determinative of the jurisdictional question involved in the instant case, and which holds as follows:

"No certified transcript of the pleadings and orders of the workmen's compensation court is required to be filed in the district court in order to give it jurisdiction of an appeal in which a rehearing or retrial has been waived before the compensation court.

"To give the district court jurisdiction in a compensation case in which a rehearing or retrial is waived before the compensation court, it is only necessary that there be filed, within fourteen days, a waiver of rehearing and a notice of intention to appeal in the compensation court, and an application or petition for a trial *de novo* in the district court, setting out the errors on which it is sought to reverse or modify the award of the compensation court. The statement of errors in the application or petition does not limit the scope of the hearing in the district court, but merely serves to point out the questions or issues which should be given particular attention on the retrial."

In the case at bar, the exhibits attached to plaintiff's petition on appeal are copies of the plaintiff's petition filed in the compensation court, the defendant's answer filed therein, and the award of a single judge of the compensation court, and virtually constitute a transcript of the proceedings had, which meets the suggestion as set forth in *Hansen v. Paxton & Vierling Iron Works, supra.*

AFFIRMED.