ERNEST ROBERT FEAGINS, APPELLEE, V. MELVIN CARVER, APPELLANT.

75 N. W. 2d 379

Filed March 9, 1956. No. 33907.

*Baskins & Baskins* and *Cline, Williams, Wright & Johnson,* for appellant.

*Beatty, Clarke, Murphy & Morgan* and *Hollman & McCarthy,* for appellee.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Chappell, J.

Plaintiff Ernest Robert Feagins originally filed a petition in the Nebraska Workmen's Compensation Court seeking to recover compensation and benefits for injuries resulting in permanent and total disability allegedly caused by an accident arising out of and in the course of his employment by defendant Melvin Carver on June 6, 1953. Defendant filed an answer in that court admitting that plaintiff was employed by defendant on such date but denying that plaintiff's injuries and disability were caused by an accident arising out of and in the course of his employment. Thereafter a hearing was had before one judge of the compensation court who dismissed plaintiff's action upon the ground that he had failed to meet the burden of proof required to establish by a preponderance of the evidence that his disability was caused by an accident as defined by section 48-151, R. R. S. 1943.

Thereafter plaintiff waived rehearing and appealed to the district court. Plaintiff's petition filed in that court substantially reiterated the allegations of his petition filed in the compensation court, except that therein he materially changed the description of the alleged accident and injuries received thereby. Insofar as important here, the allegations of defendant's answer filed in the district court were substantially the same as those contained in his answer filed in the compensation court.

After a hearing upon the merits, the trial court rendered judgment, which so far as important here found and adjudged that on June 6, 1953, plaintiff received injuries resulting in permanent and total disability caused by an accident arising out of and in the course of his employment for which plaintiff was allowed compensation together with allowances for medical and hospital expenses. Thereafter defendant's motion for new trial was overruled and he appealed to this court,

assigning in substance that the judgment of the trial court was not sustained by the evidence but was contrary thereto and contrary to law. We sustain the assignments.

At date of trial plaintiff was concededly totally disabled. Thus the extent of his disability is not involved. As we view it, the sole question presented here is whether or not plaintiff established by a preponderance of the evidence that his injuries and disability were caused by an accident arising out of and in the course of his employment. We conclude that plaintiff did not.

As recently as Jones v. Yankee Hill Brick Manufacturing Co., 161 Neb. 404, 73 N. W. 2d 394, this court, in a comparable case, reaffirmed that: "An appeal to this court in a workmen's compensation case is considered and determined de novo upon the record.

"A compensable injury within the Workmen's Compensation Act is one caused by an accident arising out of and in the course of the employment.

"An accident within the Workmen's Compensation Act is an unexpected and unforeseen event happening suddenly and violently and producing at the time objective symptoms of injury.

"In order to recover, the burden of proof is upon the claimant in a compensation case to establish by a preponderance of the evidence that personal injury was sustained by the employee by an accident arising out of and in the course of his employment.

"Mere exertion, which is no greater than that ordinarily incident to the employment, cannot of itself constitute an accident, and if combined with preexisting disease such exertion produces disability, it does not constitute a compensable accidental injury.

"An award of compensation under the Workmen's Compensation Act may not be based on possibilities, probabilities, or speculative evidence.

"The rule of liberal construction of the Workmen's Compensation Act applies to the law, not to the evidence

offered to support a claim by virtue of the law. The rule does not dispense with the necessity that claimant shall prove his right to compensation within the rules above set forth nor does it permit a court to award compensation where the requisite proof is lacking."

Also, in Pixa v. Grainger Bros. Co., 143 Neb. 922, 12 N. W. 2d 74, reaffirmed in Ruderman v. Forman Bros., 157 Neb. 605, 60 N. W. 2d 658, and Chiles v. Cudahy Packing Co., 158 Neb. 713, 64 N. W. 2d 459, cases comparable in many respects with that at bar, this court concluded that in a workmen's compensation case where the employee fails to establish by a preponderance of the evidence that there was a causal connection between an alleged accident suffered by the employee and his disability, there can be no award of compensation.

In the light of such foregoing applicable and controlling rules, we have examined the record which fairly discloses as follows: On November 18, 1953, plaintiff's counsel served upon defendant a formal written claim for compensation. Therein paragraph II described the nature and extent of his alleged injuries received on June 6, 1953, as follows: "Teh (The) posterior descending spinal artery was occluded as a direct result of traction of the adherent tissues upon the artery by the sudden exertion and flexion at the time of the hereinafter described accident, which resulted in complete paralysis and as a result of said injuries the said Ernest Robert Feagins will be encumbered for life with residual neurologic impairment and will never be self-supporting or able to do any physical work whatsoever."

Paragraph III described the alleged accident, the cause thereof, and the injuries caused thereby, as follows: "On the date aforesaid, claimant was working as your employee in helping collect garbage and rubbish, and prior to noon of that day had gone with you to your home for the purpose of picking up the garbage and refuse at your home. At that time and place the claimant was instructed by you to dump his garbage and rubbish re-

ceptacle on to your truck. That said receptacle was a barrell (barrel) of about 30 gallon capacity and was nearly full of *garbage and refuse*. That claimant leaned over to pick up the barrel and started to lift it and turn with it to dump it on the truck when he was seized with a paralysis and fell to the ground completely paralyzed." (Italics ours.)

Thereafter on January 5, 1954, plaintiff filed his petition in the compensation court. A copy of his claim aforesaid was attached thereto and made a part thereof. Also, paragraphs VII and VIII of plaintiff's petition described the nature and extent of his injuries received on June 6, 1953, and described the alleged accident, the cause thereof, and the injuries caused thereby in almost the exact language as that set forth in paragraphs II and III of plaintiff's claim aforesaid.

Further, a copy of such claim was also attached to and made a part of plaintiff's petition on appeal to the district court. Paragraph VII of such petition described the nature and extent of plaintiff's injuries received substantially in the language of paragraph VIII of his petition filed in the compensation court and that appearing in paragraph II of his claim, except that he added the words "and the spinal cord was injured." Also, paragraph VII of such petition described the alleged accident, the cause thereof, and the injuries sustained thereby in the same language as that appearing in paragraph VII of his petition filed in the compensation court, and paragraph III of his claim, down to the words "garbage and refuse." Thereafter, he alleged: "That at that time and place, plaintiff leaned over to pick up said receptacle for the purpose of dumping and emptying the same into said truck, and started to lift the receptacle and turn, with it to dump it in said truck, and as he was lifting the receptacle and turning with it *his right foot slipped and* he felt a snap in his neck and he was seized with a paralysis and fell to the ground completely paralyzed." (Italics ours.) In that connection, it will be noted that

therein was the first time plaintiff made any allegation that "his right foot slipped."

Plaintiff was 26 years old and lived with his father at North Platte. Ever since he could remember he had an impediment in his speech. He dropped out of school in the 8th grade and since that time had done farm or ranch work and ordinary labor. He was employed by defendant for some time prior to June 6, 1953, to ride on one of defendant's garbage trucks, pick up barrels of garbage, and refuse or trash, and dump them into a truck. On June 6, 1953, plaintiff had completed his round on one of defendant's trucks driven by defendant. At about 10 or 10:30 a. m. they returned to defendant's home where that truck and another owned by defendant arrived at about the same time. Three employees were on the other truck. One such employee left but two others remained standing near the trucks with plaintiff. The trucks, the general area, and the barrel involved were shown by photographs. Defendant told the employees to pick up his barrel containing garbage, tin cans, and trash, and dump it in a truck. Defendant then went into his house, but plaintiff and the two other employees visited a little while, after which plaintiff went over to pick up the barrel which weighed 50 to 60 pounds. He was standing on dry, level ground. There was nothing unusual about the size or weight of the barrel. On that same day and at other times plaintiff had lifted and dumped heavier barrels. Lifting and dumping the barrel into the truck required no exertion greater than that ordinarily incidental to plaintiff's employment. In the ordinary and usual way of doing it, plaintiff leaned over to pick up the barrel, started to lift it, raised it about to his knees, and turned to dump it in the truck, when he felt something snap in his neck. He was seized with paralysis and fell to the ground. In the compensation court plaintiff testified that as he started to raise the barrel, his foot gave out on him, his foot slipped, he was "pretty sure it did," his legs gave way after a snap, he

fell because he did not have control of his legs, his legs gave way and he went down on his face, it all happened suddenly, he didn't know anything was wrong, and the only thing that happened out of the ordinary was he felt something go wrong in his neck and he was paralyzed.

In the district court plaintiff testified that it all happened just like the snap of your finger, he reached over with his left hand, put his right hand underneath the barrel, started to lift it, and when it was about up to his knees his neck snapped, that his right foot slipped, and he heard something snap in his neck. Right after he fell plaintiff told defendant and the other two employees that he did not know what happened or what was wrong with him.

Plaintiff testified that he did not know how far his foot slipped if it did slip; he did not know and had no idea how far it slipped, or which way it slipped. He was turning with his body and did not turn his neck where the claimed injury occurred. He had been working that morning without any trouble and had thrown heavier cans on the truck, so something must have happened when he suddenly had trouble in his neck while he was handling a lighter barrel in the normal manner. He had figured out that the something which must have happened was that his foot slipped, and that was why he was pretty sure his foot slipped. He did not think the trouble could have developed unless it slipped.

The two employees of defendant who were eyewitnesses testified for defendant. One testified that nothing unusual happened except that plaintiff fell over; he did not see any slip by plaintiff; and there was nothing that he could see which indicated that plaintiff slipped. The other employee testified that he saw plaintiff go over to pick up the barrel, saw him bend over, pick it up to about even with his knees, and go to turn or twist with it, and fall. He did not see plaintiff slip or go through any unusual movements, or see anything unusual hap-

pen before plaintiff fell. Plaintiff told him he did not know what happened except that he felt paralyzed.

On June 6, 1953, at 11:30 a. m., plaintiff was admitted to St. Mary Hospital in North Platte. That hospital's "Personal History and Physical Examination" record under the headnote "Chief Complaints" discloses that plaintiff "fell while lifting a bale on farm. Couldn't move left extremities & had headache." The "Physical Findings" show in part that plaintiff had "Partial flaccid paralysis of left leg & left hand." The "Working diagnosis after physical exam." was "Possible cervical disc." The "Final Diagnosis" however was "Bulbo Spinal Poliomyelitis."

At 7:15 p. m., June 6, 1953, plaintiff was removed by ambulance to St. Francis Hospital in Grand Island. He was admitted there at 10:15 p. m., June 6, 1953. That hospital's "History and Physical" record, under the headnote "Present Illness" discloses the following information given by plaintiff: "11:30 a. m. today legs became suddenly weak and pt. limped. No colds, sore throats, headache, nausea, vomiting, stiff neck, stiff back —complains of pain in arms and legs on movement. Left leg now feels normal but troubled him this a. m. Says couldn't move arms or legs this noon but is better now although left hand seems paralyzed. * * * 6-8—Pt. states he was lifting a heavy can of garbage when something snapped in back of neck or shoulders and above story started. 6-9—Pt. reports 1½ years ago similar occurrence c̄ pain around 7th cervical and weakness left leg. Took 3 mo. to recover." The father denied that the last statement was true or that it had ever been made. In that connection, however, the written "Medical report of findings concerning the injury and disability" of plaintiff made by his own physician repeated and verified the information aforesaid as reflected by the hospital record. Such record further discloses that the "Provisional Diagnosis" was "Hysteria"

and the "Final Diagnosis" was "Spinal Cord or Meningeal Tumor."

Plaintiff was thereafter dismissed from that hospital at 1:30 p. m. on June 10, 1953, and at 3:15 p. m. that date he was admitted to the Lincoln General Hospital in Lincoln. The "Personal History" record of that hospital, under the headnote "Chief Complaint" discloses the following information given by plaintiff: "Sudden onset of upper thoracic back pain—loss of motor power in both hands & legs. Past 4-5 years, has had some weakness in (L) leg. 6-6-53. About 11:00 A. M. while lifting a bucket (Garbage hauler) experienced sudden onset of pain over cervico-thoracic spine. Immediate weakness in hands & both legs. Also noted numbness in both hands. Some numbness in legs." The headnote "Past History" discloses the following information: "(Patient said to have been 12th baby. Difficult labor. Considered 'slightly spastic.' Has speech impediment). Denies headaches. No cranial symptoms elicited. History of severe burn (R) arm. Gland trouble (L) cervical c̄ incision & drainage at age 2-3." The "Final diagnosis" made by a specialist, his attending neurological physician and surgeon, after physical examination, X-ray, and two exploratory operations, was "Chronic adhesive arachnoiditis." Plaintiff was discharged from that hospital on August 12, 1953, at 7:30 a. m. as improved. The written report of plaintiff's physician and surgeon recited: "According to the history I obtained, Mr. Feagins was in the act of tossing a rather heavy bucket on a truck when he was suddenly seized with some pain in the cervical area and fell to the ground." The record discloses that plaintiff never told such physician and surgeon that he slipped while lifting the barrel and turning to dump it into the truck. That information was subsequently given to him by plaintiff's father.

The record discloses that by examination, X-ray, and two exploratory operations on plaintiff's cervical spine,

his physician and surgeon found no evidence of actual injury, but discovered two things: He discovered that plaintiff had a severe chronic densely adhesive arachnoiditis of unknown origin but long standing with no pulsation of the spinal cord, which indicated a chronic inflammatory process. Briefly, he testified that in such cases the spinal fluid becomes thickened and heavier, and the fine, supporting, elastic, arachnoid filaments become thickened, coarse, and tough. "In other words, the protective character of the arachnoid filaments along with the spinal fluid is lost," thereby permitting any unusual shock or jarring force or stress to be transmitted directly through and into the spinal cord. It was the belief of plaintiff's physician and surgeon that a sudden jarring force, twist, or stress in handling the barrel as he did was what caused plaintiff's paralysis. Nevertheless, his notes made with regard to the first surgical procedure, recited that: " 'It is difficult to explain satisfactorily the suddenness of the onset of this patient's symptoms in the face of the chronic adhesive arachnoiditis encountered on surgical exploration.' "

On the other hand, after the second surgical procedure, the notes of plaintiff's physician and surgeon reported that he found: " 'A comparatively sizeable vessel over the dorsal aspect of the spinal cord appeared occluded. This vessel could well have been the posterior descending spinal artery. This could well explain the patient's neurologic symptoms and findings at this time.' " At the trial he testified that although such apparent occlusion of so small a vessel was purely coincidental, that by the stress and strain of lifting the barrel and turning or twisting to dump it in the truck plaintiff must have suffered a mechanical injury of some kind, either to the spinal cord or the spinal vessel, which caused his paralysis.

A specialist in neurology, psychiatry, and neurological surgery, testified as a witness for defendant. He examined plaintiff on May 5, 1954. Plaintiff told him at

that time that he "was lifting a can of trash to put in a garbage truck when he felt a snap at the base of his neck or in the region of the upper thoracic spine, and immediately fell to the ground paralyzed. His foot slipped at about the time he was lifting the can, and he was not certain whether his foot slipped before or after he felt the snap at the base of his neck." Such surgeon concluded in any event that if plaintiff did slip it had no causal relation to his disability. The effect of his evidence was to say that if plaintiff's foot slipped it was caused by his disability which previously occurred. In other words, it was plaintiff's disability that caused the slip, and not the slip that caused plaintiff's disability.

His opinion was that due to plaintiff's diseased condition, his paralysis was caused either by a hemorrhage of a blood vessel in the substance of plaintiff's spinal cord, or an occlusion or thrombosis of a blood vessel which stopped the flow of blood to a section of plaintiff's spinal cord, and paralysis ultimately occurred when, by stress and strain, plaintiff lifted the barrel and turned to dump it in the truck. He believed that since plaintiff had no previous symptoms of arachnoiditis when turning his neck, or injury to his neck, and could have but did not turn his neck at the time the paralysis occurred, any compression and injury to plaintiff's spinal cord was a mere possibility.

We are convinced that mere exertion no greater than that ordinarily incident to plaintiff's employment, combined with preexisting disease, caused his disability rather than an accident arising out of and in the course of his employment. This record is not convincing that plaintiff's right foot ever slipped, but assuming for purpose of argument only that it did, the evidence fails to establish any causal connection between such slip and plaintiff's claimed disability. To hold otherwise would be purely speculative. An award of compensation cannot be based upon possibility, probability, or speculative evidence such as appears in this case. Plaintiff has whol-

ly failed to establish by a preponderance of the evidence that his injury and disability was caused by an accident arising out of and in the course of his employment, as required by law.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is reversed and the cause is dismissed. All costs are taxed to plaintiff.

REVERSED AND DISMISSED.