Rudi Haufe, appellant, v. American Smelting & Refining Co., appellee.

79 N. W. 2d 570

Filed December 7, 1956. No. 34033.

*Herbert F. Spielhagen, Alfred A. Fiedler,* and *Joseph V. Benesch,* for appellant.

*Fraser, Crofoot, Wenstrand, Stryker & Marshall* and *Robert G. Fraser,* for appellee.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Chappell, J.

On April 27, 1955, plaintiff, Rudi Haufe, filed his petition in the Nebraska Workmen's Compensation Court, seeking a compensation award. His petition alleged in substance that on April 23, 1954, while employed as a laborer by defendant, American Smelting & Refining Co., he sustained disabling injuries to his head which were caused by an accident arising out of and in the course of his employment.

The accident and injuries were alleged to have occurred in the following manner: "While plaintiff was working on a kettle of hot lead, a crane struck a shovel which hit the upper part of plaintiff's legs, throwing him to the floor." Defendant's answer thereto admitted that plaintiff sustained some personal injuries while employed by defendant on April 23, 1954. Defendant then denied generally and expressly denied that plaintiff sustained an accident as defined and determined under the provisions of the Nebraska workmen's compensation law, and prayed for dismissal of plaintiff's petition.

After a hearing upon such issues by one judge of the compensation court, it was found and adjudged that the evidence adduced was inconsistent with the allegations of plaintiff's petition and failed to show the occurrence of any such accident as alleged; that the evidence failed to show that the injuries about which plaintiff complained were caused by an accident arising out of plaintiff's employment; that the evidence failed to establish a compensable status in plaintiff; and that his petition should be dismissed.

Thereafter plaintiff filed an application for rehearing before the compensation court en banc and a motion for leave to amend his petition by interlineation to allege that the accident and injuries occurred in a different manner, as follows: "While plaintiff was working near a kettle of lead, a shovel knocked the plaintiff to the floor, causing him severe injuries." Over objections of defendant, leave was granted plaintiff to so amend, and after a hearing en banc, plaintiff's petition was dismissed upon the ground "That the plaintiff has failed to meet the burden of proof required to establish by a preponderance of the evidence that the injuries of which he complains resulted from an accident arising out of and in the course of his employment by the defendant * * *."

Therefrom plaintiff appealed to the district court where, after a hearing, judgment was rendered which affirmed the judgment of dismissal rendered by the compensation court on rehearing en banc, and dismissed plaintiff's petition on appeal.

Plaintiff's motion for new trial was overruled and he appealed to this court, assigning that the findings and judgment of the trial court were not sustained by the evidence but were contrary thereto. We do not sustain the assignments.

The sole question presented is whether or not plaintiff established by a preponderance of the evidence that his claimed personal injuries were caused by an accident arising out of and in the course of his employment

by defendant. We conclude that he did not.

In Feagins v. Carver, 162 Neb. 116, 75 N. W. 2d 379, this court recently reaffirmed that: "An appeal to this court in a workmen's compensation case is considered and determined de novo upon the record.

"A compensable injury within the Workmen's Compensation Act is one caused by accident arising out of and in the course of the employment.

"An accident within the Workmen's Compensation Act is an unexpected and unforeseen event happening suddenly and violently and producing at the time objective symptoms of injury.

"In order to recover, the burden of proof is upon the claimant in a compensation case to establish by a preponderance of the evidence that personal injury was sustained by the employee by an accident arising out of and in the course of his employment.

"An award of compensation under the Workmen's Compensation Act may not be based on possibilities, probabilities, or speculative evidence.

"The rule of liberal construction of the Workmen's Compensation Act applies to the law, not to the evidence offered to support a claim by virtue of the law. The rule does not dispense with the necessity that claimant shall prove his right to compensation within the rules above set forth nor does it permit a court to award compensation where the requisite proof is lacking." See, also, Jones v. Yankee Hill Brick Manufacturing Co., 161 Neb. 404, 73 N. W. 2d 394; Chiles v. Cudahy Packing Co., 158 Neb. 713, 64 N. W. 2d 459.

In the light of such applicable and controlling rules we have examined the record, which fairly discloses as follows: Plaintiff, 34 years old at time of trial en banc, is a German who came from Selacia. He had served 3 years in the German army. During that service he was shot and wounded in his left shoulder by a Russian patrol. He was thereafter hospitalized for a year and discharged. Because of such wound he could not lift

his left arm higher than his shoulder, but he was able to do heavy work. He had an eighth-grade education in Germany, and although he could speak English fairly well, his testimony was adduced through an interpreter. He had lived in Omaha 3 years and had been employed by defendant since October 7, 1952.

On April 23, 1954, the date of his injuries, plaintiff was paired with another employee of defendant, who for brevity will be called partner. On that date they were working with and about press kettle No. 6 in defendant's plant on the night shift, 11 p. m. to 7 a. m. At about 4 a. m. plaintiff was injured while he and his partner were changing shovels from kettle No. 5 to kettle No. 6 and attempting to hook such shovel up to the chain on a jib crane suspended over it. The shovel, used to skim off lead, is a heavy tool about 15 feet long, with a spoon-like ladle on one end and a handle on the other. It is attached to the jib crane by inserting a hook on the end of a vertical chain dangling from the jib crane into an eye located on the shovel about one-fourth the distance from the ladle to the handle. The shovel was heavy enough and the chain short enough so that it required two men to hook it up.

Plaintiff's testimony with regard to the alleged accident, which was confusing, conflicting, and speculative in several material respects, tended to establish as follows: In order to hook up the shovel, carried over from kettle No. 5 to kettle No. 6, the ladle was placed on the rim of kettle No. 6, and plaintiff held it up by the handle on the other end while his partner attempted to hook the chain through the eye of the shovel. The shovel belonging to kettle No. 6 had been taken therefrom because it was fouled with lead. A press was then down inside kettle No. 6 about 2 or 2½ feet, and was located therein about one-half foot from the right side of such kettle, so plaintiff and his partner placed the tip end of the shovel down under the rim of the press, which left about two-thirds or 10 feet of the

heavy part of the shovel resting against the edge in the corner of kettle No. 6, where the shovel extended at an angle into the air about 3 feet above and just to the right of plaintiff's head. While trying to hook up the shovel from kettle No. 5 to the jib crane at kettle No. 6, plaintiff changed his position in order to get out of the way of an 8,000-pound dipper suspended from heavy monorail overhead crane No. 4 which was moving fast across and above the floor. At that time the press started vibrating and swinging, which caused the shovel so inserted in kettle No. 6 to slip and strike plaintiff on the right side of his head, knocking him unconscious to the floor, and causing him serious and permanent injuries to his head.

With regard to the alleged accident, a workman who was peeved and disgruntled because he had not been given plaintiff's assignment that night and who was no longer in defendant's employ at time of trial, admitted that he was probably 40 or 50 feet away from plaintiff and his partner at the time of the incident, but claimed to have seen it, and substantially corroborated plaintiff's version aforesaid with regard to the manner and cause of plaintiff's injuries. However, several other witnesses who were working or waiting nearby did not remember seeing such witness there on duty that night.

Right after plaintiff was injured, he was taken to and treated at Methodist Hospital in Omaha, where he remained 9 days. Although plaintiff testified that he had never before had any fainting spells or dizziness, and that he was unconscious for 6 days after the injury, the hospital and medical records refute that contention. They show that plaintiff "Recovered consciousness on evening of 4/25" and had "uneventful convalescence since." They also show that on April 26, 1954, plaintiff stated in his history given to an attending physician that "as a child he had 2-3 episodes of 'unconsciousness' suggestive of epilepsy and that during the war he also had 2-3 episodes." Further, in prognosis notes made

by an attending physician on May 2, 1954, it is stated: "patient fell at work 4/23/54 striking back of head on concrete floor. Witnesses state that he suddenly stopped work, clenched his fists at his side & then fell backward e̅ his body rigid. Questionable history of two previous seizures suggestive of grand mal."

Upon leaving the hospital plaintiff went home where he stayed 3 weeks, after which time he started back to work regularly for defendant and continued to do so until sometime in April 1955 when he quit because he claimed headaches, pain in his legs, weakness, and dizziness. In the meantime, plaintiff was examined by four eminent physicians. Plaintiff remembered giving a history to one of them, who reported that: "The history strongly suggests that the patient fell spontaneously from some cause within himself. The fact that he stiffened and fell rigid strongly suggests an epileptic attack. If the history he previously gave at the Methodist Hospital is correct, he has had previous episodes of loss of consciousness, this also would strongly suggest a diagnosis of idiopathic epilepsy. * * * There is no indication that there will be any permanent disability."

In that connection, there is no question that plaintiff and his partner were attempting to hook the shovel up to the jib crane at kettle No. 6 at the time plaintiff was injured, but the evidence is overwhelming that his injuries were not caused by any accident arising out of and in the course of his employment by defendant.

· In that connection, the testimony of plaintiff's partner was in all material respects contrary to that adduced by plaintiff. In such respect, he testified that the ladle of the shovel taken from kettle No. 5 was resting on a projection of the press beam and not on the rim of kettle No. 6 as plaintiff held up the handle end of the shovel while his partner, with his back to plaintiff about 4 feet away, grabbed the chain to hook it up in the eye of the shovel; that the shovel, taken from kettle No. 6, was lying on the floor on the other side of kettle

No. 6 and never was wedged under a press inside such kettle; and that no overhead crane ever came by them at all prior to plaintiff's injury. He did not see plaintiff fall to the floor, but knew that plaintiff dropped his end of the shovel, and, turning, saw him lying injured on the floor.

An eyewitness, who was only about three steps from plaintiff and watching the operation when plaintiff was injured, testified that at that time no shovel was wedged under the press in kettle No. 6 as claimed by plaintiff, but that the shovel taken from kettle No. 6 was lying on the floor between kettles Nos. 5 and 6; that no overhead cranes were moving at that time; and that plaintiff simply stiffened, let loose the end of the shovel, and rigidly fell backwards, fast and heavy like in a spasm, hitting his head on the concrete floor.

Another eyewitness, who was standing about 20 feet from plaintiff and watching the operation at the time plaintiff was injured, testified that no overhead cranes were operating at the time and that no shovel was wedged down in kettle No. 6 as claimed by plaintiff, but that the shovel taken therefrom was lying over behind that kettle on the floor; and that all at once plaintiff simply let his hands go down, dropped the shovel, and fell back fast, flat on his back on the concrete floor.

There were four heavy overhead monorail cranes in defendant's plant. In that connection, however, the head crane operator assigned to operate overhead crane No. 4 on that date, 11 p. m. to 7 a. m., and another overhead crane operator assigned to crane No. 2, both testified that no such cranes were operating at all at the time plaintiff was injured; that crane No. 4 was from 200 to 300 feet away from plaintiff and had not been moving for about 15 minutes; that crane No. 3 was 50 or 60 feet away from plaintiff and had not been moving for about 15 minutes; that crane No. 2 was about 100 feet away from plaintiff and had not been moving for about 20 minutes; and that crane No. 1 had not been operating

at all that night. Thus plaintiff's version that overhead crane No. 4 or any other overhead crane moved across the floor and set up a vibration which loosed a shovel pressed down at an angle in kettle No. 6, causing it to strike plaintiff on the head and injure him, was completely refuted.

We conclude that plaintiff failed to meet the burden of proof required to establish by a preponderance of the evidence that the injuries of which he complained were caused by an accident arising out of and in the course of his employment by defendant. Rather, a preponderance of the evidence clearly establishes that plaintiff's injuries were caused by some physical reaction within himself which suddenly felled him backward and down, causing his head to strike the concrete floor.

For reasons heretofore stated, the judgment of the trial court which affirmed the judgment of the Nebraska Workmen's Compensation Court en banc and dismissed plaintiff's petition on appeal, should be and hereby is affirmed. All costs are taxed to plaintiff.

AFFIRMED.