JOSE CARRANZA, APPELLEE, V. PAYNE-LARSON FURNITURE COMPANY, A COPARTNERSHIP, ET AL., APPELLANTS.

85 N. W. 2d 694

Filed November 1, 1957. No. 34248.

Blackledge & Sidner, for appellants.

Dryden & Jensen, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This is a workmen's compensation case. Plaintiff, Jose Carranza, in his petition filed in the Nebraska Workmen's Compensation Court, alleged that defendant, Payne-Larson Furniture Company, hereinafter called defendant, was a partnership composed of Alvie Payne and James Larson, with its principal place of business in Kearney, and that defendant Glens Falls Insurance Company was its compensation insurer. Plaintiff also alleged therein that on a specified date, "while engaged in the course of his employment and in the warehouse of the defendant * * * while attempting to lift a Certa (Serta) bed, he injured his back, causing a rupture of

the intervetetral (intervertebral) disc in said back," which caused him to be totally disabled for a stated period of time and thereafter suffered a 10 percent permanent partial disability. He also alleged "that as a direct and proximate result of the injury sustained by him as a result of attempting to lift said Certa (Serta) Bed as aforesaid, he incurred" certain medical, surgical, and hospital bills.

After a hearing before one judge of the workmen's compensation court, judgment was rendered on January 18, 1956. Thereafter, on January 20, 1956, plaintiff filed in the workmen's compensation court a waiver of rehearing and a notice of intention to appeal directly to the district court for Buffalo County, all of which is shown by a certificate of the workmen's compensation court filed in the district court on January 23, 1956. Also on that date, plaintiff filed his petition for trial de novo in the district court, reciting that he had waived rehearing before the workmen's compensation court and elected to appeal directly to the district court. Therein he alleged that he was employed by defendant as a common laborer and: "That on about the 18th day of August, 1955, while engaged in the course of his employment and in the warehouse of the defendant * * * while attempting to lift a Certa (Serta) bed, being approximately 250 pounds, the same wobbled as he was lifting his end of the same, causing a rupture of the intervertebral disc in his back" which resulted in total disability for a stated period of time, and thereafter a 10 percent permanent partial disability. He also alleged: "* * * that as a direct and proximate result of the injuries sustained by him in attempting to lift said Certa (Serta) bed as aforesaid," he incurred certain medical, surgical, and hospital bills.

So far as important here, the answer of defendants was a general denial and a specific denial that plaintiff sustained any injury from an accident arising out of and in the course of his employment by defendant, and a

specific denial that either of the defendants was under any obligation to pay for any claim made by plaintiff.

After a trial on the merits in the district court, a decree was rendered, finding that: "* * * plaintiff sustained an accidental injury on or about the 18th day of August, 1955, while in the course of his employment for the defendant * * *. That said injury was sustained, while he was lifting a certa (Serta) bed weighing approximately 250 pounds. That as said bed was lifted, it wobbled and plaintiff slipped and the bed fell partially out of his hand and while attempting to grab it, he sustained an extruded intervertebral disk (disc) in his back. The court further finds that the aforesaid plaintiff was temporarily totally disabled from the 22nd day of August, 1955 up to and including the 20th day of February 1956. That thereafter he was 10% permanently partially disabled." At this point, it should be said that there was no competent evidence whatever which could sustain a finding that "plaintiff slipped."

Judgment was rendered in accord with the aforesaid findings, and defendants' motion for new trial was overruled. Therefrom they appealed to this court, assigning error as follows: (1) That plaintiff in his appeal to the district court failed to make a record sufficient to support a judgment because he failed to plead or prove any previous judgment of the workmen's compensation court; and (2) that the evidence was not sufficient to support a finding that plaintiff's alleged injuries and disability were caused by an accident arising out of and in the course of his employment. We conclude that assignment (1) has no merit, but that assignment (2) should be sustained.

We turn first to assignment (1). In that connection, section 48-181, R. R. S. 1943, provides in part: "In any such case, any party thereto may serve notice upon and waive rehearing before the Nebraska Workmen's Compensation Court. In such case any appeal shall be directly to the district court of the county in which the

accident occurred; * * *. Such appeal to the district court shall be taken and perfected in the same manner as provided for appeals *to the compensation court.* In such cases the trial in the district court shall be *a trial de novo."* (Italics supplied.) With relation to that section, we said in Sporcic v. Swift & Co., 149 Neb. 246, 30 N. W. 2d 891: "The defendant argues that plaintiff's petition in the instant case failed to have attached to it the pleadings and orders of the Workmen's Compensation Court as required by law, citing Hansen v. Paxton & Vierling Iron Works, 135 Neb. 867, 284 N. W. 352, to the effect that the petition on appeal in the cited case, from the compensation court, included a copy of the pleadings before the Workmen's Compensation Court, setting forth the issues, and also the order of dismissal of the Workmen's Compensation Court. * * *

"In the cited case, followed by Bell v. Denton, 136 Neb. 23, 284 N. W. 751, there was no specific requirement that the pleadings, orders and findings of the Workmen's Compensation Court be attached to the petition on appeal. Section 48-181, R. S. Supp., 1945, which provides for direct appeal when rehearing is waived before the Nebraska Workmen's Compensation Court to the district court, makes no such requirement that such pleadings, orders or findings be attached to the petition on appeal to perfect such appeal where the petition sets out the errors of the compensation court and alleges that rehearing was waived and notice of appeal given in due time." That statement is controlling here and disposes of defendants' first contention.

In dealing with assignment (2), we turn to Feagins v. Carver, 162 Neb. 116, 75 N. W. 2d 379, wherein we held: "An appeal to this court in a workmen's compensation case is considered and determined de novo upon the record.

"A compensable injury within the Workmen's Compensation Act is one caused by an accident arising out of and in the course of the employment.

"An accident within the Workmen's Compensation Act is an unexpected and unforeseen event happening suddenly and violently and producing at the time objective symptoms of injury.

"In order to recover, the burden of proof is upon the claimant in a compensation case to establish by a preponderance of the evidence that personal injury was sustained by the employee by an accident arising out of and in the course of his employment.

"Mere exertion, which is no greater than that ordinarily incident to the employment, cannot of itself constitute an accident, and if combined with preexisting disease such exertion produces disability, it does not constitute a compensable accidental injury.

"An award of compensation under the Workmen's Compensation Act may not be based on possibilities, probabilities, or speculative evidence.

"The rule of liberal construction of the Workmen's Compensation Act applies to the law, not to the evidence offered to support a claim by virtue of the law. The rule does not dispense with the necessity that claimant shall prove his right to compensation within the rules above set forth nor does it permit a court to award compensation where the requisite proof is lacking." See, also, Haufe v. American Smelting & Refining Co., 163 Neb. 329, 79 N. W. 2d 570; Jones v. Yankee Hill Brick Manuf. Co., 161 Neb. 404, 73 N. W. 2d 394.

Such rules are controlling here on the merits, and we summarize the material and relevant evidence in the light thereof. Also, in doing so, we are not unmindful that Jones v. Yankee Hill Brick Manuf. Co., *supra,* was decided by this court on December 9, 1955, and that in the district court, after filing his petition in the compensation court and testifying therein, plaintiff materially changed his theory of recovery, as shown by his petition on appeal, and his testimony with regard thereto in the compensation court and the district court, in order to meet the exigencies of the pending action.

That conduct makes applicable Gohlinghorst v. Ruess, 146 Neb. 470, 20 N. W. 2d 381, wherein we held: "Where a plaintiff, without reasonable explanation, testifies to facts materially different concerning a vital issue than had previously been testified to by him under oath in another action, the change clearly being made to meet the exigencies of the pending action, the evidence is discredited as a matter of law and should be disregarded.

"A trial court is not required to helplessly sit by and permit a litigant to toy with the processes of the court by insisting under oath at different times on the truth of each of two contradictory stories according to the exigencies of the particular occasion presenting itself." Subsequently, we have distinguished that case, but, where controlling, we have never departed from the foregoing rules promulgated therein.

Further, we also discover upon examining this record that plaintiff's testimony on appeal was so uncertain, inconsistent, contradictory, and speculative in material respects that it is unworthy of belief.

Plaintiff was a high school graduate. At time of trial he was 26 years of age, married, and had 3 children. He resided near Kearney, farmed some 40 acres or more of irrigated land, and was employed at odd jobs in and about Kearney in his spare time. On August 15, 1955, he returned from 15 days of service with the National Guard, where he had been a track vehicle mechanic and attended its military maneuvers in Minnesota. On the afternoon of August 17, 1955, defendant employed plaintiff at 90 cents an hour to temporarily assist it in unloading a boxcar of furniture and move some of it to defendant's store and some of it to defendant's warehouse. Two other employees of defendant, one Jim Campbell, hereinafter called Jim, and John Payne, hereinafter called John, who was a 15-year-old son of one of the partners, worked with plaintiff, who had done some comparable odd-job work for defendant during the previous year.

Plaintiff did such work the rest of August 17, 1955, and continued to do so on the 18th and 19th, and again on Monday, August 21, 1955, when he returned to work. However, on that date he went with Jim in defendant's truck to assist in the delivery of some furniture in Kansas, which completed his work with defendant. In that connection, plaintiff testified that while riding in the truck that day his back felt stiff and upon their return he told Jim that his back felt a little stiff and that maybe he had hurt it real bad.

He testified that on August 17, 1955, they started to take some chests out of the boxcar to defendant's store, and the next day they took some furniture down to defendant's warehouse where they had to move some of it in order to make room for that which yet remained in the boxcar. In doing so, they lifted and moved a Serta bed weighing about 275 to 300 pounds, at which time plaintiff claimed to have been injured. Jim had hold of one end of the bed and plaintiff the other. Plaintiff testified that: "It didn't look too heavy. I just bent over like I usually do and picked it up. * * * I bent over and I had the Serta sleeper about half ways up and it wobbled and I lost my balance on my feet and it slipped out, and instead of letting it fall and put it clear down I tried to keep it from falling on the cement; and when I did that I felt a snap in my back, a sharp pain; and I tried to lift it up again; and I told Jim: 'I think I hurt my back;' * * * 'I can't lift it up.' * * * 'You better get John Payne to help me lift it up.'" Then Jim took hold of one end while John took hold of one corner and plaintiff took hold of the other. Thus they lifted it up and moved it over to another part of the warehouse.

Plaintiff continued to work the rest of that day. The next morning he felt stiff, but thought it was caused by the unusual kind of work he was doing, so he worked that day and again on Monday. Thereafter, he was stiff and had a little pain in his lower pelvic

region, and a few days later one leg seemed shorter than the other, so on August 30, 1955, he went to see a chiropractor who treated him for a lumbosacral strain on that date and three times thereafter. Plaintiff gave that doctor no history of being injured while moving some furniture for defendant, but said he had the difficulty with his back for about one week. Later he told that doctor he hurt his back when he lifted a sleeper for defendant, and they might have insurance on it.

In the meantime, plaintiff told one of the partners "that he believed that he had injured his back in some way * * * while he was working for" defendant. On September 1 that partner and plaintiff went to see counsel for defendant insurer. There plaintiff voluntarily made, corrected, and signed a written question and answer statement duly certified by an official court reporter.

In that statement, he said among other things: "I don't know what really happened, but when we unloaded that car the first day I worked for them why I felt stiff, you know, tired, and — oh, I probably reached for those chests and they were pretty heavy, but I didn't think nothing about it. I didn't think I had hurt my back or nothing, knocked a bone out of place or nothing. * * * I wasn't feeling good all last week, you know, after I got done working for them. But I didn't even think about it being my back, or nothing, and I told my wife, I says: 'This will probably get over in two or three days. I'm tired from lifting all that furniture.' So I just thought that was what it was." When asked to fix the date when his back started hurting, plaintiff answered: "Well, I don't know. I think it happened when we were unloading them boxcars, because we had to reach high and we had to slide those chests down." He admitted that it was nothing sudden, saying: "Well, I'll tell you what happened. I was unloading a chest and when I lifted it up — we lifted up a sleeper, one of those big sleepers, and I

told him: 'I can't lift that up by myself. My back hurts.'" Plaintiff said nothing in his statement about the bed wobbling or slipping, or losing his balance and grabbing for it.

About September 15, 1955, plaintiff went to see Doctor Royal Jester, Jr., and Doctor Harold V. Smith, who were associated together in the practice of medicine. In that connection, Doctor Smith, as a witness for plaintiff, testified: "He gave a history of hurting and pain while he was working for Payne Larson, on the date of approximately August 23rd, from the record that we have here; that he was carrying furniture at the time he suffered the occurrence of the pain in his back. * * * I understood that he had been working for Payne Larson and that he thought he had hurt his back while lifting furniture at that time. * * * We felt that his injury was a disk (disc) injury; and with the history of pain, the onset of the pain while he was lifting furniture, we assumed that it occurred at that time."

They then referred plaintiff to Doctor Robert M. House, an orthopedic surgeon in Grand Island, who examined plaintiff on October 3, 1955. He then gave a history of injuries incurred while at work unloading furniture, "stated that he hurt his back while lifting this furniture." On October 12, 1955, that surgeon operated upon plaintiff for an extruded intervertebral disc at the fifth left lumbar level, and in giving his conclusion with regard to what caused or aggravated plaintiff's disability, the surgeon relied upon his initial examination and that history given him by plaintiff.

The next statement made by plantiff was in his petition filed in the compensation court. Therein he said that: "* * * while attempting to left a Certa (Serta) Bed, he injured his back, * * *." In his testimony in the compensation court, he said nothing about the bed wobbling or falling down, or losing his balance and grabbing to catch it, and in the district court blandly so admitted, giving as an excuse that nobody had

asked him about it. He claims that he did testify in the compensation court about "attempting to lift the bed and it slipping." He says in this record that the bed wobbled and slipped, and in attempting to grab it he felt a pain in his back. There is no competent evidence that in doing so plaintiff himself slipped or fell or twisted his back.

Also, in his petition filed in the district court, defendant simply said: "* * * while attempting to lift a Certa (Serta) bed, being approximately 250 pounds, the same wobbled as he was lifting his end of the same, causing a rupture of the intervertebral disc in his back." The only other testimony regarding the alleged incident was given by plaintiff's fellow employees, Jim and John, who were called as witnesses for plaintiff. Their evidence gave plaintiff no support. Jim, a deliveryman for defendant, was plaintiff's superior. In describing what happened with relation to the Serta bed, he said: "Well, Jose and I was to bring this hide-a-bed to the store. And I lifted up my end, and I asked Jose to help me and he picked it up and immediately dropped it or set it down, I forget which, and said his back was hurting. * * * He just said his back was sore." Jim then asked John to help and the three of them lifted and moved the bed. Thereafter plaintiff continued to work without complaint and never claimed he had hurt his back in any manner until he was in the store 3 or 4 days or maybe a week later. He then said "that he had hurt his back" without calling attention to any incident when he had hurt it. Jim had so moved furniture quite often, nearly every day, and testified that two men usually handled a Serta bed. John testified that he had lifted one end of such beds before, and he remembered that he helped plaintiff lift the bed involved when he was called to help do it, but he remembered nothing further about the incident.

Alvie Payne, a defendant partner, who was called as a witness by plaintiff, testified that plaintiff was em-

ployed to do odd jobs when needed; that his wages were 90 cents an hour; that a Serta bed weighed from 275 to 300 pounds, and was quite a lift; and that he was out of town on August 17, 1955, the day that plaintiff was employed, and never thereafter learned about plaintiff's claimed back injury until a week or so later when plaintiff came to him and said "that he believed that he had injured his back in some way" while he was working for defendant in its warehouse. Thereafter, the witness took plaintiff to see counsel for defendant insurer, where he made the written statement aforesaid.

We are convinced that mere exertion in lifting the Serta bed, which exertion was no greater than that ordinarily incident to plaintiff's employment, combined with preexisting disease, produced plaintiff's disability, rather than an accident arising out of and in the course of his employment. To hold otherwise would erroneously permit plaintiff to recover an award based upon possibilities, probabilities, or speculative evidence. Further, this record is not convincing that the Serta bed wobbled or slipped, or that plaintiff was injured thereby. His testimony in that regard was clearly changed to meet the exigencies of his appeal and thus, being discredited as a matter of law, should be and is disregarded. To hold otherwise would permit plaintiff to toy with the processes of courts, which this court will not tolerate.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is reversed and the cause is dismissed. All costs are taxed to plaintiff.

REVERSED AND DISMISSED.

YEAGER, J., participating on briefs.